**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2023 MSPB 12**

Docket No. DA-1221-21-0009-W-1

**Aimee Karnes,**

**Appellant,**

**v.**

**Department of Justice,**

**Agency.**

March 20, 2023

Lawrence Berger, Esquire, Glen Cove, New York, for the appellant.

Sean Lee, Washington, D.C., for the agency.

Susan E. Gibson, Arlington, Virginia, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**OPINION AND ORDER**

¶1     The agency has filed a petition for review of the initial decision, which granted the appellant's request for corrective action and ordered her reassignment to her former position.  For the reasons set forth below, we DENY the petition for review, MODIFY the administrative judge's analysis of the factors set forth in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), but agree with her ultimate conclusion, and otherwise AFFIRM the initial decision.

BACKGROUND

¶2    The appellant was formerly employed as a GS-13 Administrative Officer at the U.S. Marshal Service's Eastern District of Oklahoma (EDOK).  Initial Appeal File (IAF), Tab 1 at 1, Tab 8 at 8.  In July and August 2019, she disclosed to the agency's Sex Offenses Investigation Coordinator that her first-level supervisor improperly sold Government property for scrap metal and used the money for a coffee and water fund, and had fabricated timecards by certifying that he was on duty during periods that he was absent without corresponding leave.  IAF, Tab 7 at 17-18, 25-34.  The Investigation Coordinator contacted the Office of Special Counsel (OSC) on the appellant's behalf, and the appellant later filed an anonymous OSC complaint regarding the same matters.  *Id.* at 17-18.  OSC subsequently contacted the agency, and the agency conducted an internal affairs (IA) review into the appellant's claims.  *Id.*

¶3    Following the IA investigation, the Deputy Director of the U.S. Marshal Service assembled a District Assessment Team (DAT) and sent the team to EDOK to conduct interviews regarding the work climate in the EDOK office, with the purpose of identifying any underlying issues that may have been impeding the agency's mission in the district.  IAF, Tab 8 at 11; Hearing Transcript (HT) at 128-32 (testimony of the Deputy Director), 200 (testimony of a DAT member).  The DAT members interviewed all employees in EDOK and produced a written report of conclusions and recommendations.  IAF, Tab 8 at 11-16.  The report concluded, among other things, that the district was divided between two "factions" of employees, one of which was aligned with the appellant, and the other of which was aligned with the appellant's first-level supervisor.  *Id.* at 12.  The report also recommended, among other things, that both the appellant and the Investigation Coordinator who contacted OSC on the appellant's behalf be reassigned to positions in another district.  *Id.* at 16.  The Deputy Director reviewed the DAT report and issued the appellant a management directed reassignment (MDR) from her position in EDOK to a Budget Analyst position in

Arlington, Virginia. IAF, Tab 8 at 9-10; HT at 123 (testimony of the Deputy Director).

¶4    The appellant accepted the MDR under protest, and on May 13, 2020, she filed an OSC complaint alleging that she was reassigned in retaliation for her prior complaint to OSC disclosing wrongdoing by her supervisor. IAF, Tab 7 at 17-18, 25-34, Tab 8 at 9-10. OSC issued a close-out letter informing the appellant of her right to seek corrective action with the Board, IAF, Tab 1 at 7-8, and the appellant timely filed the instant individual right of action (IRA) appeal, *id.* at 1-6.

¶5    After holding the appellant's requested hearing, IAF, Tab 27, the administrative judge issued an initial decision granting her request for corrective action, IAF, Tab 31, Initial Decision (ID) at 1, 13. The administrative judge found that the appellant exhausted her administrative remedy regarding her May 2020 OSC complaint and that she was subjected to a personnel action when she was issued the MDR. ID at 8; *see* 5 U.S.C. § 2302(a)(2)(A)(iv) (identifying a reassignment as personnel action for the purposes of an IRA appeal). The administrative judge further concluded that the appellant proved by preponderant evidence that her OSC complaint was a contributing factor in the agency's decision to issue the MDR. ID at 8-10. Having found that the appellant established her prima facie case of whistleblower reprisal, the administrative judge considered whether the agency showed by clear and convincing evidence that it would have taken the same personnel action in the absence of the appellant's protected activity and concluded that it did not. ID at 10-12. Because the agency failed to meet its burden, the administrative judge granted the appellant's request for corrective action and ordered the agency to reassign the appellant to her former position. ID at 13.

¶6 The agency has filed a petition for review of the initial decision.[1] Petition for Review (PFR) File, Tab 1. The appellant has filed a response in opposition to the petition for review. PFR File, Tab 7.

## ANALYSIS

¶7 The parties do not dispute on review the administrative judge's finding that the Board has jurisdiction over the appeal, and we discern no basis to disturb that finding. ID at 1, 8 n.4. On review, the agency argues that the administrative judge erred by improperly relying on speculation as the basis for her finding that the agency officials who effected the MDR had constructive knowledge of the appellant's OSC complaint, and by concluding that the appellant's protected activity was one of the factors that influenced the agency's decision to issue the MDR. PFR File, Tab 1 at 11-14, 16-18. The agency further argues that the Board cases the administrative judge relied on in concluding that the relevant management officials had constructive knowledge of the appellant's protected activity are inapposite or factually distinguishable. *Id*. at 14-16. Finally, the agency argues that the administrative judge erroneously concluded that it failed to prove by clear and convincing evidence that it would have reassigned the appellant in the absence of her protected activity. *Id*. at 18-22. Specifically, it argues that the administrative judge discounted the testimony and findings from the DAT members indicating that the appellant was a significant source of conflict in EDOK and that was the reason that she was reassigned, and not because of her protected activity. *Id.*

---

[1] The agency also certified that it has provided the appellant with interim relief in accordance with 5 U.S.C. §§ 7701(b)(2)(A)-(B) by providing her with pay and benefits as of the date of the initial decision. PFR File, Tab 1 at 22. The appellant has not challenged the agency's certification of interim relief.

<u>The administrative judge did not err in finding that the appellant established that her protected activity was a contributing factor in the MDR decision.</u>

¶8        To prevail on the merits of an IRA appeal, an appellant must meet her initial burden of proving by preponderant evidence that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D) and; (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 8; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).  The appellant "may demonstrate that the disclosure or protected activity was a contributing factor in the personnel action through circumstantial evidence, such as evidence that—(A) the official taking the personnel action knew of the disclosure or protected activity; and (B) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action." 5 U.S.C. § 1221(e)(1)(A), (B).

¶9        As an initial matter, the agency has not challenged the administrative judge's findings that the appellant engaged in protected activity by filing a complaint with OSC's Disclosure Unit in 2019, and we find no reason to disturb that finding.  ID at 8; *see Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 62 (clarifying that, under 5 U.S.C. § 2302(b)(9)(C), any disclosure of information to OSC is protected, regardless of the content).

¶10        In determining that the appellant established that her protected activity was a contributing factor in the decision to issue the MDR, the administrative judge acknowledged that the appellant's OSC complaint was anonymous and that there was no evidence that the members of the DAT or the Deputy Director had firsthand knowledge of her protected activity.  ID at 8-9.  She nevertheless concluded that there was sufficient evidence demonstrating that the appellant's first-level supervisor believed that the appellant filed the OSC complaint.  In so

finding, the administrative judge relied on testimony from the U.S. Marshal for EDOK, who stated that he believed that the appellant's supervisor believed that the appellant submitted the complaint. The administrative judge also relied on the appellant's testimony that her supervisor would have surmised that she was the source of the complaint based on the fact that she was the timekeeper and would have known about the fabricated timecards, and that she had repeatedly complained about the supervisor's stated intention of selling the Government property for scrap metal. ID at 8-9.

¶11 The administrative judge determined that the supervisor, armed with the belief that the appellant filed the OSC complaint, influenced the DAT's reassignment recommendation by specifically suggesting that the appellant be reassigned during his interview with the DAT, the DAT members then considered that suggestion alongside the other information obtained from the DAT interviews, and the Deputy Director accepted the DAT's recommendation that was influenced by the supervisor's suggestion. ID at 9-10. Given the close proximity in time between the IA investigation and the appellant's OSC complaint, the supervisor's recommendation to the DAT interviewers that the appellant be reassigned, and the issuance of the MDR, the administrative judge concluded that the appellant proved by preponderant evidence that her protected activity was a contributing factor in the agency's reassignment decision. ID at 9-10.

¶12 On review, the agency argues that the administrative judge's finding that the Deputy Director and the DAT members had constructive knowledge of the appellant's OSC complaint was based on the appellant's mere speculation that her first-level supervisor could have deduced that she made the anonymous complaint to OSC, and that there was no credible evidence that the supervisor was ever informed that it was the appellant who made the anonymous disclosure to OSC. PFR File, Tab 1 at 12-13.

¶13        We find no error in the administrative judge's finding that the appellant established by preponderant evidence that her protected activity of filing a complaint with OSC was a contributing factor in the agency's decision to issue the MDR. The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has sufficiently sound reasons for doing so. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The Board may overturn an administrative judge's demeanor-based credibility determinations when the judge's findings are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole. *Faucher v. Department of the Air Force*, 96 M.S.P.R. 203, ¶ 8 (2004). Here, although the administrative judge did not make specific demeanor-based credibility determinations in the initial decision, she did hear live testimony, and her decision to credit specific testimony must be deemed to be at least implicitly based upon witness demeanor. *See Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 4 (2009).

¶14        Based on her review of the record and the hearing testimony, the administrative judge determined that it was more likely than not that the appellant's supervisor believed the appellant made the disclosures that formed the basis for the IA investigation and the anonymous OSC complaint, based on testimony from the appellant and the U.S. Marshal for EDOK. ID at 8-9; HT at 53-54 (testimony of the appellant), 344-47 (testimony of U.S. Marshal for EDOK). She further concluded that the appellant's first-level supervisor had a motive to retaliate against the appellant given that he was the subject of her complaint, and the supervisor had made known his general disdain for employee complaints and the numerous investigations that they spawned. ID at 9, 12; IAF, Tab 26 at 29-31. Thus, the administrative judge found that the appellant proved contributing factor by preponderant evidence. ID at 10.

¶15    Regarding the agency's argument that the appellant's assertion that her supervisor believed that she made the disclosure to OSC amounted to little more than mere speculation and the administrative judge erred by relying on that speculation, this represents an oversimplification of the administrative judge's findings in this regard. As the agency correctly notes, the appellant admitted that she did not have direct information that her supervisor learned of her disclosures or her OSC complaint. HT at 66-70 (testimony of the appellant). However, she also testified that her supervisor knew that she was the only individual who could have made the disclosure based on the unique information she possessed, given her role as the designated timekeeper for the 12-person office, and the fact that she had previously expressed concern to her supervisor regarding his intention to sell the surplus property for scrap, one of the subjects of her OSC disclosure. *Id.* at 53-54, 69-71 (testimony of the appellant).

¶16    The U.S. Marshal for EDOK echoed those beliefs in his testimony, stating that although he did not specifically recall directly discussing whether the appellant made the disclosure to OSC with the appellant's supervisor, he would have found it "hard to believe" that the topic did not come up, noting that the appellant's role as the timekeeper for the district would have given her access to the supervisor's time records used in the disclosure, and he observed that there was a consistent source of conflict between the appellant and the supervisor. HT at 345-47 (testimony of U.S. Marshal for EDOK).

¶17    Although the agency appears to suggest that any influence the appellant's supervisor may have had on the DAT's recommendation to reassign the appellant was too speculative or attenuated to constitute a contributing factor, we disagree. PFR File, Tab 1 at 14-18. The administrative judge acknowledged testimony from the DAT members stating that the supervisor did not influence their recommendation, but nevertheless noted that the DAT members conceded that they based their reassignment recommendation, in part, on the supervisor's testimony during the DAT interview, which included his recommendation that the

appellant should be reassigned. ID at 9; HT at 225-26 (testimony of a DAT member), 275-76 (testimony of a DAT member). She further concluded that the Deputy Director who ultimately issued the MDR "unreservedly" accepted the DAT's recommendation that was influenced by the supervisor, citing the Deputy Director's testimony that he "always follow[s]" the DAT's recommendation unless there was a compelling reason not to, such as if it violated a policy or was inappropriate, and that he saw no reason to deviate from the DAT's recommendation that the appellant be reassigned. ID at 6, 10; HT at 123, 129-30, 151, 159, 161-62 (testimony of the Deputy Director and MDR deciding official).

¶18      The agency also argues that the cases the administrative judge relied on to support her finding that constructive knowledge could be established in such a circumstance were distinguishable. PFR File, Tab 1 at 14-16. Specifically, regarding the administrative judge's reliance on *Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35 (2014), the agency argues that *Aquino* is distinguishable because it concerned a circumstance in which an individual with *actual* knowledge of the disclosure influenced the official taking the retaliatory personnel action, while here, the appellant's supervisor—i.e., the agency official who influenced the official taking the retaliatory personnel action—only possessed *constructive* knowledge of the appellant's disclosure. *Id.* at 14-15. Regarding the administrative judge's reliance on *Marchese v. Department of the Navy*, 65 M.S.P.R. 104 (1994), for the proposition that contributing factor could be established by showing that an individual with either actual or constructive knowledge of a disclosure influenced the official taking the contested personnel action, the agency argues that the language in *Marchese* addressing constructive knowledge was merely "dicta" because the influencing official in that case had actual knowledge of the disclosure. PFR File, Tab 1 at 15-16. Finally, regarding the U.S. Supreme Court's decision in *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), which the administrative judge cited for the proposition that an employer could be held liable for taking a personnel action when a supervisor's retaliatory

animus was the proximate cause of an adverse employment action, even if the retaliating supervisor did not make the ultimate decision on the employment action, the agency states only that the decision is "clearly inapposite" on its face. PFR File, Tab 1 at 16.

¶19    The Supreme Court has adopted the term "cat's paw" to describe a case in which a particular management official, acting because of an improper animus, influences another agency official who is unaware of the improper animus when implementing a personnel action. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 11 (2012) (citing *Staub*, 562 U.S. 411). The Board has explicitly adopted the approach set forth in *Staub* in the context of IRA appeals. *See Aquino*, 121 M.S.P.R. 35, ¶¶ 5, 19-24. Under the cat's paw theory, an appellant can establish that a prohibited animus toward a whistleblower was a contributing factor in a personnel action by showing by preponderant evidence that an individual with knowledge of the protected disclosure influenced the officials who are accused of taking the personnel actions. *Id.*, ¶ 23.

¶20    The respondent in a corrective action appeal is the agency, not its individual officials; therefore, a lack of actual knowledge by a single official is not dispositive to the issue of contributing factor. *Nasuti v. Department of State*, 120 M.S.P.R. 588, ¶ 7 (2014); *Dorney*, 117 M.S.P.R. 480, ¶ 12. Additionally, the Board has specifically rejected the agency's argument that the appellant must prove that the influencing official had actual knowledge of the disclosure in order to establish contributing factor and has instead made clear that contributing factor can be established by a showing that the influencing official had actual *or* constructive knowledge of the disclosure, and that official influenced the official taking the retaliatory action. *See McClellan v. Department of Defense*, 53 M.S.P.R. 139, 146-47 (1992) (concluding that reprisal could be shown by establishing that a person with only constructive knowledge, as opposed to actual knowledge, of an appellant's disclosure influenced the official taking the action

against the appellant, in the context of an IRA appeal) (citing *Frazier v. Merit Systems Protection Board*, 672 F.2d 150, 166-68 (D.C. Cir. 1982)).

¶21    Finally, although not identified by the administrative judge, it is noteworthy that the supervisor's specific recommendations that both the appellant and the Sex Offenses Investigation Coordinator be reassigned out of the district were ultimately adopted by the DAT and incorporated into its report of recommendations to the Deputy Director. *Compare* IAF, Tab 8 at 16, *with* IAF, Tab 26 at 30. As the administrative judge observed, a number of employees suggested to the DAT that the appellant's reassignment from the district would improve morale, but no employee other than the appellant's supervisor also recommended that the Investigation Coordinator be reassigned. IAF, Tab 26 at 20-36. The fact that the supervisor's specific recommendations to reassign the appellant and the Investigation Coordinator were ultimately incorporated into the DAT's recommendation also bolsters the administrative judge's finding that the DAT was influenced by the supervisor's recommendation.

¶22    In summary, we find no error in the administrative judge's finding that, based on the record evidence and the hearing testimony, the following facts were established by preponderant evidence: the appellant's first-level supervisor believed the appellant filed the OSC complaint that launched the IA investigation; the supervisor, motivated by retaliatory animus, recommended that the appellant be reassigned during his DAT interview; the DAT members were influenced by the supervisor's recommendation and took it into account in recommending the appellant's reassignment; and the Deputy Director "unreservedly" accepted the DAT's recommendation that was tainted by the supervisor's retaliatory motive in making his decision to issue the appellant the MDR. Based on the foregoing, the administrative judge reasonably concluded that the appellant established that her protected activity of filing a complaint to OSC was a contributing factor in the agency's decision to issue the MDR.

<u>We disagree with the administrative judge's finding that the first and third *Carr* factors cut against the agency, but still conclude that the agency failed to establish by clear and convincing evidence that it would have reassigned the appellant in the absence of her protected activity.</u>

¶23     Even if an appellant establishes that she made a protected disclosure or engaged in a protected activity that was a contributing factor to the agency's personnel action, the Board will not order corrective action if the agency can show by clear and convincing evidence that it would have taken the action absent the disclosure or activity.  5 U.S.C. § 1221(e)(2); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015).  Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established; it is a higher standard than the "preponderance of the evidence" standard.  *Sutton v. Department of Justice*, 94 M.S.P.R. 4, ¶ 18 (2003), *aff'd*, 97 F. App'x 322 (Fed. Cir. 2004); 5 C.F.R. § 1209.4(e).

¶24     In determining whether an agency has met this burden, the Board will consider all of the relevant factors, including the following ("*Carr* factors"): (1) the strength of the agency's evidence in support of the action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see also Carr*, 185 F.3d at 1323.[2]  The Board does not view these factors as discrete elements, each of which the agency must prove by clear and

---

[2] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on these types of whistleblower issues.  However, pursuant to the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510, appellants may file petitions for judicial review of Board decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction.  *See* 5 U.S.C. § 7703(b)(1)(B).  Therefore, we must consider these issues with the view that the appellant may seek review of this decision before any appropriate court of appeal.

convincing evidence. Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Lu*, 122 M.S.P.R. 335, ¶ 7. The Board considers all of the evidence presented, including evidence that detracts from the conclusion that the agency met its burden. *Soto*, 2022 MSPB 6, ¶ 11; *see also Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

¶25     On review, the agency argues that the administrative judge improperly discounted its evidence demonstrating that it had strong reasons to support its decision to reassign the appellant unrelated to her whistleblowing activity under the first *Carr* factor. PFR File, Tab 1 at 18-22. Specifically, the agency argues that the administrative judge ignored the significant evidence obtained by the DAT during the climate assessment reflecting that the appellant played a central role in the turmoil within the EDOK and so her transfer was justified. *Id.* at 18-19. The agency points to notes and testimony from the DAT members reflecting that several employees in EDOK expressly stated that the appellant was a problem in the office and that she should be removed from the district. *Id.* at 19.

¶26     We disagree with the administrative judge's finding that the agency did not present strong reasons for its decision to reassign the appellant and with her implicit finding that the first *Carr* factor weighs against the agency. ID at 10-12. Instead, for reasons that follow, we conclude that the agency provided a valid explanation for its decision to reassign the appellant and so the first *Carr* factor weighs in the agency's favor. We also disagree with the administrative judge's finding that because the agency failed to produce evidence regarding its treatment of similarly situated non-whistleblowers, the third *Carr* factor cuts against the agency. However, because we conclude that the second *Carr* factor strongly weighs against the agency, we ultimately agree that the agency failed to prove by clear and convincing evidence that it would have reassigned the appellant absent her protected activity.

*The administrative judge improperly discounted the strength of the agency's evidence in support of the reassignment action under the first Carr factor.*

¶27    Regarding the first *Carr* factor, addressing the administrative judge's finding discounting the opinions of two of the employees that favored the appellant's removal from the district based on the fact that they were also the subjects of her disclosures and thus had a motive to retaliate against the appellant, the agency points to testimony from the DAT members stating that their reassignment decision was not based on a simple headcount and was instead based on the "totality of the report" and their discussions and interviews with all of the district employees.  PFR File, Tab 1 at 20-21.  The agency similarly argues that the administrative judge unreasonably rejected a third employee's statements to the DAT that were supportive of the appellant's first-level supervisor and critical of the appellant on the grounds that the employee was new and was a probationer.  *Id.* at 20-21.  Summarizing, the agency argues that the DAT's recommendation to reassign the appellant was based on an independent, unbiased analysis of the information obtained during the climate assessment, and so the administrative judge erred in concluding that the agency did not have strong reasons to support the reassignment decision and the first *Carr* factor did not favor the agency. *Id.* at 21.

¶28    In finding that the agency failed to present strong evidence in support of the reassignment decision, the administrative judge determined that the evidence the DAT relied on to justify its reassignment recommendation was weak.   ID at 11-13.  Specifically, the administrative judge noted that although the DAT determined that four employees supported the appellant's "faction" in the office while six employees supported the appellant's supervisor's faction, the testimony of two of the six employees that supported the supervisor could be discounted because they were implicated in the same scrap metal sale investigation as the appellant's supervisor and they were also the subject of the appellant's negative

attention, so they had their own motives to retaliate against the appellant. ID at 11-12. Having reduced the inter-office split between the appellant and her supervisor to four employees supporting each faction, the administrative judge concluded that the "big impact" the DAT attributed to the greater number of employees supporting the appellant's supervisor's faction over the appellant's faction was blunted, detracting from the strength of the DAT's recommendation. ID at 12.

¶29    However, this is an overly simplistic approach to assessing the strength of the agency's evidence under the first *Carr* factor. As the agency notes on review, although the DAT members cited the number of employees that supported each of the respective factions as playing a role in its decision to recommend the appellant's reassignment, the DAT members also made clear that they considered all of the evidence obtained during the DAT, including their discussions and interviews with all of the EDOK employees, in making their recommendation. HT at 240-41 (testimony of a DAT member), 275 (testimony of a DAT member). The DAT members denied that the reassignment decision ultimately boiled down to a "mathematical equation" or was "strictly a numbers game," and insisted instead that it was based on their understanding of what was occurring in the district and how the climate in the district could be improved overall. *Id.*

¶30    Additionally, unlike with the appellant's first-level supervisor, there is no evidence in the record indicating that the two employees whose DAT testimony the administrative judge discounted because they were also implicated in the appellant's disclosures were aware that the appellant engaged in protected activity, and so there is no reason to discount their DAT testimony on the basis that it was motived by retaliatory animus. IAF, Tab 8 at 11-16, Tab 26 at 7-36. Further, we agree with the agency that the administrative judge's stated reason for discounting the DAT testimony of a third employee, his probationary status and relative newness in the district, is unpersuasive.

¶31    The agency also disagrees with the administrative judge's finding that the decision to reassign the appellant to a Budget Analyst position was "illogical" because the DAT report indicated that the appellant struggled with budget duties and lacked sufficient skills to perform in the Budget Analyst position. PFR File, Tab 1 at 18-19, 21; ID at 12. However, the DAT did not include a specific recommendation that the appellant be reassigned to a Budget Analyst position, and instead generally recommended that she be reassigned to a nonsupervisory position and moved to another district that best met the agency's needs. IAF, Tab 8 at 16. It was the Deputy Director, with the approval of the agency Director, who ultimately recommended the reassignment to the Budget Analyst position based on input he received from the DAT and several other internal agency offices, and so additional factors other than the appellant's prior performance as a Budget Analyst played a role in the agency's decision to recommend her reassignment to that specific position. IAF, Tab 8 at 9-10; HT at 123-24 (testimony of the Deputy Director).

¶32    In sum, based on our review of the record evidence, we conclude that the administrative judge improperly discounted the agency's evidence in support of its reassignment decision in concluding that the agency had not presented strong reasons for its decision to reassign the appellant and so the first *Carr* factor cut against the agency. Instead, we conclude that the first *Carr* factor weighs in the agency's favor.

> *The administrative judge's finding that the second Carr factor weighs against the agency is supported by the record.*

¶33    The administrative judge determined that the second *Carr* factor weighed against the agency, noting that the appellant's supervisor had a strong motive to retaliate against the appellant given the nature of her disclosures and the supervisor's comments to the DAT evidencing a general retaliatory animus toward whistleblowers, as well as the fact that the supervisor had recommended that another whistleblower, the Investigation Coordinator, also be reassigned.

ID at 12-13. The agency has not specifically challenged the administrative judge's finding on this point on review. As we have found in the past, even those not directly implicated by disclosures may well be motivated to retaliate if they are responsible for the agency's performance overall, as the criticism reflects on them in their capacities as managers and employees. *Smith v. Department of the Army*, 2022 MSPB 4, ¶ 28; *see also Whitmore*, 680 F.3d at 1371. We agree with the administrative judge's finding that the second *Carr* factor strongly weighs against the agency. *See Russell v. Department of Justice*, 76 M.S.P.R. 317, 326 (1997) (finding that the officials involved had a strong motive to retaliate because, in pertinent part, they were the subjects of the appellant's protected disclosures); *see also Whitmore*, 680 F.3d at 1371 (cautioning the Board against taking "an unduly and restrictive view of *Carr* factor two").

> *The agency failed to present any evidence regarding the third Carr factor, so this factor does not weigh in favor of the agency and is neutral.*

¶34    The administrative judge also determined that the third *Carr* factor weighed against the agency because it presented no evidence regarding how it treated similarly situated non-whistleblowers, and the agency has not challenged this finding on review. ID at 13. We disagree with the administrative judge's conclusion that this factor weighs against the agency and instead conclude that the lack of evidence regarding the agency's treatment of similarly situated non-whistleblowers is a neutral factor.

¶35    The agency bears the burden of proving that it would have taken the same action in the absence of the appellant's protected activity. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 14 (2015). Because the agency bears the burden of proof, when it fails to introduce relevant comparator evidence, the third *Carr* factor is effectively removed from consideration, although it cannot weigh in the agency's favor. *Soto*, 2022 MSPB 6, ¶ 18; *see also Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Rickel v. Department of*

*the Navy*, [31 F.4th 1358](#), 1365-66 (Fed. Cir. 2022). If the first two *Carr* factors either do not support a finding that the agency would have taken the same personnel action in the absence of the disclosure or protected activity, or support such a finding with respect to one of those *Carr* factors but not the other, the failure to present evidence of the third *Carr* factor may prevent the agency from carrying its overall burden. *Smith*, [2022 MSPB 4](#), ¶¶ 26-30; *see also Miller v. Department of Justice*, [842 F.3d 1252](#), 1259-63 (Fed. Cir. 2016).

¶36    Here, the agency failed to produce any comparator evidence, but it also has not identified whether any similarly situated non-whistleblower comparators exist, and there is no discussion in the record regarding the existence of potential comparators. Given the complete absence of evidence on the issue, we conclude that *Carr* factor 3 is removed from consideration and is a neutral factor.

¶37    After reweighing the *Carr* factors, we still agree with the administrative judge's finding that the agency failed to meet its burden of proving by clear and convincing evidence that it would have reassigned the appellant absent her protected activity. Although the agency may have had valid reasons for reassigning the appellant out of the district based on her role in contributing to a tense and toxic work environment, that fact is outweighed by the significant evidence that the reassignment decision was influenced by the appellant's first-level supervisor's retaliatory motive. For the above-stated reasons, the agency's petition for review is denied and the administrative judge's initial decision ordering corrective action is affirmed.

¶38    This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 ([5 C.F.R. § 1201.113](#)).

ORDER

¶39    We ORDER the agency to cancel the appointment's reassignment and return her to her former position as a GS-13 Administrative Officer, in the Eastern

District of Oklahoma. *See Kerr v. National Endowment for the Arts*, [726 F.2d 730](#) (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶40 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision. Nevertheless, it does not appear that the appellant suffered any loss of pay given the nature of the personnel action at issue in this appeal. To the extent the appellant believes that she is entitled to back pay, she may file a petition for enforcement raising the issue.

¶41 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* [5 C.F.R. § 1201.181](#)(b).

¶42 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. [5 C.F.R. § 1201.182](#)(a).

¶43 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and

Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60 day period set forth above.

NOTICE TO THE APPELLANT<br>REGARDING YOUR RIGHT TO REQUEST<br>ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

NOTICE TO THE APPELLANT REGARDING<br>YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR<br>COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages including interest, reasonable expert witness fees, and costs, 5 U.S.C. §§ 1214(g)(2), 1221(g)(1)(A)(ii), which you may be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE PARTIES

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D).  5 U.S.C. § 1221(f)(3).  Please note that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel."  5 U.S.C. § 1214(f).

## NOTICE OF APPEAL RIGHTS[3]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all

---

[3] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[4]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[4] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:


/s/
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.