# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| KERRI S. KUHLMANN,<br>          Appellant,<br><br>     v.<br><br>DEPARTMENT OF LABOR,<br>          Agency. | DOCKET NUMBER<br>DC-1221-19-0793-W-1<br>DC-1221-20-0190-W-1<br><br><br>DATE:  June 20, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Kerri S. Kuhlmann</u>, Arlington, Virginia, pro se.

<u>Carolyn Cheung</u>, Esquire, and <u>Rolando Valdez</u>, Esquire, Washington, D.C.,
     for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and did not participate in the adjudication of
this appeal.

## FINAL ORDER

¶1     The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in her joined individual right of action (IRA) appeals.  Generally, we grant petitions such as this one only in the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED as to the administrative judge's analysis of the appellant's prima facie case and the agency's evidence that it would have taken the same actions absent the appellant's protected disclosures and activity, we AFFIRM the initial decision.

**BACKGROUND**

¶2      The appellant was formerly employed by the agency as a GS-14 Employee Benefits Law Specialist in the Employee Benefits Security Administration's (EBSA) Office of Regulations and Interpretations (ORI), Division of Coverage, Reporting, and Disclosure (DCRD) in Washington, D.C. *Kuhlmann v. Department of Labor*, MSPB Docket No. DC-1221-19-0793-W-1 (0793 appeal), Initial Appeal File (0793 IAF), Tab 1 at 71, Tab 96 at 84. While employed in this position, the appellant had difficulty working with her first-level supervisor, who at the time was the Chief of the DCRD, and whom she alleges harassed her, by, among other things, committing battery by touching the appellant's arm during a meeting in February 2016. 0793 IAF, Tab 1 at 15. Following the February 2016 incident, the appellant was assigned to report to another interim supervisor. 0793 IAF, Tab 7 at 11. The appellant alleges that on June 21, 2017, her former

first-level supervisor again harassed and intimidated her in the copy room, after which the appellant contacted the Federal Protective Service (FPS). 0793 IAF, Tab 1 at 21. On July 27, 2017, the agency directed the appellant's reassignment from her position in ORI to the position of GS-14 Senior Technical Advisor in the Office of Enforcement (OE), Division of Financial Investigations (DFI). 0793 IAF, Tab 1 at 71, Tab 96 at 84.

¶3     The appellant filed two IRA appeals alleging that, in reprisal for making numerous alleged protected disclosures and engaging in protected activities, she was subjected to a variety of personnel actions. 0793 IAF, Tab 1; *Kuhlmann v. Department of Labor*, MSPB Docket No. DC-1221-20-0190-W-1 (0190 appeal), Initial Appeal File (0190 IAF), Tab 1. In the 0793 appeal, the appellant alleged that she made 18 alleged disclosures.[2] 0793 IAF, Tab 1. These alleged disclosures, which we address in detail below, span from December 2016 to July 2019 and include, among numerous others, an alleged obstruction of justice by agency officials when they falsely denied during an investigation of the alleged February 2016 battery that the appellant's former supervisor had touched her. 0793 IAF, Tab 1. As another example, according to the appellant, she disclosed an abuse of authority by her former supervisor based on the supervisor's alleged harassing conduct in the copy room on June 21, 2017. *Id.* The appellant also alleged that she engaged in the following protected activities: (1) in December 2016, she filed a complaint with the Office of the Inspector General (IG) regarding improper hiring practices; and (2) on March 26, 2017, she filed a Board appeal, *Kuhlmann v. Department of Labor*, MSPB Docket No. DC-1221-17-0437-W-1 (0437 appeal), *id.* at 18, 20. In reprisal, the appellant contends that she was subjected to 12 personnel actions, including, among others, the following: the July 23, 2017 directed reassignment to OE, various changes in duties, responsibilities, and working conditions, denial of several requests for

_____

[2] The appellant originally alleged 19 disclosures in the 0793 appeal, but she withdrew disclosure 19. 0793 IAF, Tab 73 at 46.

reassignment, exclusion from acting details and assignments, and a threat of a lowered performance appraisal. 0793 IAF, Tab 1.

¶4 In the 0190 appeal, the appellant alleged that she made three disclosures relating to the validity of her tentative fiscal year 2018 performance rating, her fiscal year 2019 performance standards, and her fiscal year 2019 performance rating. 0190 IAF, Tab 1. She also alleged that she engaged in protected activities by filing the 0437 and 0793 appeals and meeting with and making various disclosures to Office of Special Counsel (OSC). 0190 IAF, Tab 1 at 13. In reprisal, the appellant asserted that the agency lowered her fiscal year 2019 performance evaluation and denied her official time.[3] 0190 IAF, Tab 1 at 13.

¶5 Upon motion by the appellant, the administrative judge joined the 0793 and 0190 appeals. 0793 IAF, Tabs 58-60. After the appellant withdrew her request for a hearing, 0793 IAF, Tab 88, the administrative judge issued an initial decision based on the written record, 0793 IAF, Tab 105, Initial Decision (ID). He found that the appellant established jurisdiction, but he denied her request for corrective action on the merits. ID at 2, 10. The administrative judge found that the appellant proved that disclosures 2, 5, 8, and 14 in the 0793 appeal were protected and that she engaged in protected activity by filing Board appeals; filing a complaint with the agency's IG; making disclosures to OSC; and notifying agency officials of her intent to do so. ID at 16-17, 21, 24-28, 51-52. The administrative judge further found that the appellant failed to prove by preponderant evidence that her remaining alleged disclosures were protected. The administrative judge found that the appellant's protected disclosures and protected activity were a contributing factor in several personnel actions, ID at 57-58, but that the agency proved by clear and convincing evidence that it would have taken the same actions absent such disclosures and activity, ID at 59-87.

---

[3] The appellant also raised additional personnel actions in the 0190 appeal, which she subsequently withdrew. 0793 IAF, Tab 73 at 78. Therefore, we do not address those additional actions here.

¶6 The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 9.[4] The agency has opposed the appellant's petition, and the appellant has filed a reply. PFR File, Tabs 21, 27.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶7 After establishing the Board's jurisdiction in an IRA appeal, the appellant must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). 5 U.S.C. § 1221(e)(1); *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). A protected disclosure is a disclosure of information that the appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8); *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 7 (2016). The proper test for determining whether an employee had a reasonable belief that her disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the disclosure evidenced one of the circumstances described in 5 U.S.C. § 2302(b)(8). *Bradley*, 123 M.S.P.R. 547, ¶ 7.

---

[4] The appellant also filed a motion for leave to submit an additional pleading to object to the Clerk of the Board's decision to grant the agency an extension of time to respond to the appellant's petition and to demonstrate bias. PFR File, Tab 15. The appellant's motion is denied because she already had ample opportunity to present her arguments. *See Sabio v. Department of Veterans Affairs*, 124 M.S.P.R. 161, ¶ 13 (2017). Indeed, the appellant filed an objection to the agency's motion for an extension, PFR File, Tab 11, and raised claims of bias in her petition for review, for which she was granted extensions of time and a waiver of the page limit, PFR File, Tabs 2, 4, 6, 9.

<u>We discern no basis to disturb the administrative judge's determination that disclosures 2, 5, 8, and 14 in the 0793 appeal were protected.</u>

¶8  The administrative judge addressed 18 alleged disclosures in the 0793 appeal and found that the appellant met her burden of proof for disclosures 2, in part, and disclosures 5, 8, and 14, but not the remaining disclosures 1, 3-4, 6, 7, 9-13, and 15-18. ID at 13-39. The parties do not dispute the administrative judge's findings as to disclosures 5, 8, and 14, and we discern no basis to disturb those findings.

¶9  The appellant disagrees with the administrative judge's determination that only a portion of disclosure 2 was protected. PFR File, Tab 9 at 25. The appellant alleged that she disclosed to U.S. Senate staff and FPS that various EBSA officials falsely denied in sworn statements to FPS that her former first-level supervisor had touched her on February 26, 2016. 0793 IAF, Tab 1 at 19, Tab 8 at 29-33. The administrative judge found the disclosure protected only as to the appellant's statement that her former first-level supervisor falsely denied touching her. ID at 16-17. On review, the appellant argues that the administrative judge should also have found that the appellant reasonably believed that her second-level supervisor and EBSA's Chief Human Capital Officer in the Office of Program Planning and Evaluation Management (OPPEM) submitted false statements, relying on various arguments she submitted below. PFR File, Tab 9 at 25. We have examined the cited documents but are not persuaded that they cast doubt on the administrative judge's determination that the appellant proved only her reasonable belief as to her former first-level supervisor.

¶10  As to the Chief Human Capital Officer, the appellant asserted below that she reasonably believed that he lied when he denied to FPS that staff that he interviewed in connection with the incident stated that they witnessed an "assault." She reasoned that the Chief Human Capital Officer had previously stated to the appellant that two employees had observed her former first-level

supervisor "physically touch[ing] [the appellant's] body." 0793 IAF, Tab 8 at 31, Tab 72 at 48. We see nothing inconsistent in these two statements, as the Chief Human Capital Officer may not have interpreted the alleged touching as an assault.

¶11 Regarding the alleged false statement by her second-level supervisor, the appellant asserts that, because this supervisor was seated opposite the appellant at a table and speaking with her when the appellant's former first-level supervisor touched the appellant, she must have witnessed the touching. IAF, Tab 8 at 32, Tab 97 at 169. However, the appellant's speculation as to what her second-level supervisor may have seen is not sufficient to establish that the appellant reasonably believed that the supervisor saw the touching or that she later lied about it. Therefore, we discern no error in the administrative judge's findings. However, on July 12, 2016, the appellant also disclosed her claims that the "witnesses lied and/or obstructed justice" to OSC. 0793 IAF, Tab 8 at 30. "[C]ooperating with or disclosing information to the Inspector General . . . of an agency, or the Special Counsel" is protected activity under 5 U.S.C. § 2302(b)(9)(C)—irrespective of whether an individual had a reasonable belief that she was disclosing wrongdoing. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 62 (quoting 5 U.S.C. § 2302(b)(9)(C)). Thus, we find that the appellant engaged in protected activity.

The administrative judge properly found that the appellant did not prove that disclosures 4, 6-7, 9-13, and 15-18 raised in the 0793 appeal were protected under section 2302(b)(8), but should have found that disclosures 1 and 3 were protected.

¶12 On review, the appellant challenges the administrative judge's findings that she failed to prove disclosures 1, 3-4, 6, 10-11, 13, and 15-18 in the 0793 appeal were protected.[5] PFR File, Tab 9; ID at 39-51. As an initial matter, the appellant asserts that the administrative judge erred generally in finding that her alleged

---

[5] The appellant's petition for review contains no arguments about disclosures 7, 9, or 12 in the 0793 appeal, which the administrative judge found did not amount to protected disclosures but did amount to protected activity. ID at 24, 52.

disclosures were not protected because they amounted to personal workplace grievances about how agency managers were treating her and improperly relied on *Mc Corcle v. Department of Agriculture*, 98 M.S.P.R. 363 (2005), in finding that such disclosures were not protected. PFR File, Tab 9 at 12-15. The appellant contends that *Mc Corcle* relied on *Willis v. Department of Agriculture*, 141 F.3d 1139 (Fed. Cir. 1998), which was abrogated by the Whistleblower Protection Enhancement Act of 2012 (WPEA). We agree.

¶13 The Senate report on the proposed legislation that later was enacted as the WPEA expressed concerns over decisions, including *Willis*, that narrowed the scope of the definition of a protected disclosure. S. Rep. No. 112-155 at 4-6 (2012). The report concluded that the strong national interest in protecting good faith whistleblowing required broad protection of whistleblower disclosures, notwithstanding any concern that management of the Federal workforce could be "unduly burdened if employees [could] successfully claim whistleblower status in ordinary employment disputes." *Id.* at 6. The committee concluded that the focus of the whistleblower analysis therefore should be whether the employee reasonably believed that she disclosed a category of wrongdoing under 5 U.S.C. § 2302(b)(8), rather than whether her disclosure of information met the statutory definition of "disclosure." *Id.* at 6-7. Notwithstanding the administrative judge's reliance on *Mc Corcle*, we agree with the administrative judge's findings regarding the appellant's disclosures, as more fully discussed below.

*Disclosures 10, 13, 15, and 18*

¶14 We agree with the administrative judge that a disinterested person would not have believed that alleged disclosures 10, 13, 15, and 18 evidenced wrongdoing under section 2302(b)(8). Alleged disclosure 10 amounts to the appellant's disagreement with the agency's denial of her request for a private office, alleged disclosure 15 relates to the appellant's contention that she was improperly required to arrange her own travel when a travel coordinator should have been available to do so, and alleged disclosures 13 and 18 concerned the

appellant's report that she was being mistreated, including the denial of a private office and denial of her transfer request.[6]  0793 IAF, Tab 1 at 49-54, 56, 58, 62-63.  Although the appellant disagreed with these decisions and felt she should have been provided with the details concerning the agency's justification for its decisions, she has not alleged facts sufficient to establish that a reasonable person would have believed that she was disclosing a violation of law, rule, or regulation, an abuse of authority, or any other category of wrongdoing.  For example, regarding disclosure 15, the administrative judge found, and we agree, that the appellant could not reasonably have concluded it was an abuse of authority for the agency to ask her to make her own travel arrangements.

*Disclosure 1*

¶15    The appellant alleges that in December 2016 she disclosed a violation of Office of Personnel Management and agency hiring rules as well as an abuse of authority when two GS-14 employees were placed in higher-graded acting positions for more than 120 days without competition.  0793 IAF, Tab 73 at 21.  According to the appellant, the individuals continued in the acting positions for 6 months until the agency permanently promoted them.  0793 IAF, Tab 1 at 17.  The appellant contends that she reasonably believed that the agency's actions violated 5 C.F.R. § 335.103(c)(1)(ii) and the agency's internal placement plan, which mandate that details over 120 days are subject to competitive hiring procedures.  0793 IAF, Tab 1 at 16-17, Tab 9 at 23-25.  The administrative judge found that the appellant failed to show she reasonably believed she was disclosing wrongdoing because the agency had informed the appellant that the two employees were never officially detailed and were merely acting until the positions were filled and the appellant speculated that the practice was illegal

_____

[6] In disclosure 13, the appellant alleged that the agency's actions constituted reprisal for her whistleblowing and that she intended to file a complaint with OSC.  We agree with the administrative judge that such email amounts to protected activity.  ID at 24 n.12.

because she could not find an explicit authorization for the practice. ID at 14-15; 0793 IAF, Tab 9 at 7.

¶16    We disagree with the administrative judge that the appellant's belief was not reasonable because she failed to rely on input from staffing experts and assumed a violation occurred because she could not satisfy herself that the "situation was entirely above board." ID at 15. The appellant sought information from human resources, which could not provide any authority to support the decision to place the individuals in acting positions because they concluded there was no official rule. 0793 IAF, Tab 9 at 20, Tab 74 at 35. Under the circumstances, we find that a disinterested observer in the appellant's position could have reasonably believed that the agency failed to comply with the requirement to use "competitive procedures" to detail two individuals to higher-graded positions for "more than 120 days." 5 C.F.R. § 335.103(c)(1)(ii).

*Disclosure 3*

¶17    Disclosure 3 consisted of an email that the appellant sent to an official in the agency's Office of Solicitor of Labor (SOL) on June 14, 2017. 0793 IAF, Tab 10 at 14. In her email, the appellant stated, among other concerns, that the agency had failed for 5 months to respond to a request for records she made under the Privacy Act. *Id.* The Privacy Act requires an agency to make available to an individual, upon her request, records that the agency maintains pertaining to that individual in a system of records retrieved by her name or other personal identifier. 5 U.S.C. § 552a(a)(5), (d)(1). Under agency regulations implementing the Privacy Act, an individual seeking her records first requests them from the appropriate agency component. 29 C.F.R. § 71.2(a). The component is required to respond to the request in writing within 30 days by either granting or denying it "in whole or in part," or explaining that no responsive records were located. 29 C.F.R. § 71.4(a)-(c). If an individual is dissatisfied with the component's response, she may appeal to the SOL. 29 C.F.R. § 71.7(a).

¶18        The appellant made a request to EBSA for records relating to her employment maintained in six systems of records.  0793 IAF, Tab 10 at 23, 26.  According to the agency, she "perfected [her request] on February 9, 2017."  *Id.* at 26.  On June 2, 2017, the agency provided the appellant with an interim response to her request.  *Id.*  It provided 286 pages of documents in response and indicated EBSA was continuing to search its records.  *Id.*  On June 5, 2017, the appellant appealed this response to the SOL.  *Id.* at 14-16.  In the June 14, 2017 email that constitutes disclosure 3, the appellant complained that the SOL had failed to acknowledge her appeal, suggested the agency's alleged failure to properly process her request was whistleblower reprisal, and asserted SOL staff had committed perjury.  *Id.* at 14.  The SOL acknowledged the appellant's Privacy Act appeal on June 16, 2017.  *Id.* at 20-21.

¶19        The administrative judge determined that this disclosure was not protected because the appellant could not have reasonably believed the agency had refused to process her Privacy Act request given that the agency did, in fact, process her request.  ID at 18-19.  The appellant asserted in her email that the agency was "refus[ing] to allow [her] to view her personnel records."  0793 IAF, Tab 10 at 14.  However, as indicated above, 2 weeks earlier, EBSA had provided her with 286 pages of documents, and stated it was continuing to search for more.  0793 IAF, Tab 10 at 26.  On review, the appellant claims the documents produced were her "nonresponsive sign-in/sign-out emails."  PFR File, Tab 9 at 23.  However, documents regarding the appellant's presence at work concern her, and the appellant has not otherwise explained why she believed these documents were nonresponsive.  Therefore, we discern no basis to disturb the administrative judge's determination that the appellant could not have reasonably believed the agency was refusing to process her Privacy Act request.

¶20        Although not addressed by the administrative judge, we also find that the appellant could not reasonably have believed, as stated in her June 14, 2017 email, that the agency was ignoring her appeal from EBSA's June 2, 2017

response. 0793 IAF, Tab 10 at 14. At the time she made this statement, only 9 calendar days, and even fewer working days, had passed since her June 5, 2017 appeal. *Id.* Further, while the appellant argues that the administrative judge ignored her accusation, in her June 14, 2017 email, regarding "SOL lawyers' false statements/suborning perjury," we discern no error. PFR File, Tab 9 at 22-23. To constitute protected whistleblowing, disclosures must be specific and detailed, not vague allegations of wrongdoing. *Salerno*, 123 M.S.P.R. 230, ¶ 6. While the administrative judge did not directly address whether the appellant's accusation of perjury was protected, neither the appellant's disclosure nor her petition for review provide information regarding the basis of her perjury claim. PFR File, Tab 9 at 22-23; 0793 IAF, Tab 10 at 14. Therefore, we find that the appellant failed to show that her perjury allegation was protected.

¶21    For the same reason, to the extent the appellant suggests on review that she also disclosed whistleblower reprisal in her June 14, 2017 email, we are not persuaded. PFR File, Tab 9 at 22. She reflected in her email that "[i]t is ironic" that the agency violated her Privacy Act rights in reprisal for unspecified whistleblowing. 0793 IAF, Tab 10 at 14. However, she did not explain in her email, and does not indicate on review, what disclosures she believed led to the agency's Privacy Act violation. PFR File, Tab 9 at 22; 0793 IAF, Tab 10 at 14. Thus, it is unclear what information served as the basis for her whistleblower reprisal claim. *See Gryder v. Department of Transportation*, 100 M.S.P.R. 564, ¶ 13 (2005) (concluding that an appellant failed to nonfrivolously allege he made a protected disclosure because, in pertinent part, he made no allegation of facts that explained what led him to conclude the agency had engaged in the specified wrongdoing).

¶22    Further, to the extent the appellant suggests that her disclosure constituted protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), we are not persuaded. PFR File, Tab 9 at 22-23. The Board has IRA jurisdiction over claims of reprisal for activity protected under section 2302(b)(9)(A)(i), which includes "the exercise of

any appeal, complaint or grievance right . . . with regard to remedying" whistleblower reprisal. *McCray v. Department of the Army*, 2023 MSPB 10, ¶ 12. The appellant's June 14, 2017 email was an appeal from the agency's response to her Privacy Act request. The administrative judge indirectly addressed whether the appellant's email constituted protected activity under section 2302(b)(9)(A)(i) by observing that the appellant could remedy a violation of her Privacy Act rights through the Federal courts. ID at 18. The general absence or presence of an alternative remedy is not relevant to the Board's jurisdiction in this instance. *See generally McCray*, 2023 MSPB 10, ¶ 12 (recognizing that the Board could have IRA jurisdiction over a claim of reprisal for filing a grievance seeking to remedy whistleblower reprisal); *Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶ 8 (stating that the Board has IRA jurisdiction over claims of reprisal for equal employment opportunity (EEO) activity seeking to remedy whistleblower reprisal). Nonetheless, we find that the appellant's June 14, 2017 activity was not protected under section 2302(b)(9)(A)(i) on other grounds.

¶23    Although the appellant vaguely claimed in her email that she was the victim of whistleblower reprisal, she did not seek a remedy. 0793 IAF, Tab 10 at 14. Rather, she sought to resolve the alleged denial of her Privacy Act rights. *Id.*; *see Gabel*, 2023 MSPB 4, ¶ 8 (concluding that an EEO complaint that did not seek to remedy whistleblower reprisal did not fall within the scope of section 2302(b)(9)(A)(i)). Therefore, her Privacy Act appeal was not protected activity within the scope of the Board's IRA jurisdiction.

¶24    However, we disagree with the administrative judge that the appellant did not prove that she reasonably believed that information she disclosed in her June 14, 2017 email evidenced a violation a law, rule, or regulation. ID at 17-19. An employee must identify the "specific law, rule, or regulation that was violated," but she is not required to identify the "statutory or regulatory provision by title or number, when [her] statements and the circumstances surrounding the making of those statements clearly implicate an identifiable violation of law, rule,

or regulation." *Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001) (internal citations and quotations omitted).

¶25    In her email, the appellant complained that the agency had failed to provide her with records she "first requested . . . *five months ago*." 0793 IAF, Tab 10 at 14 (emphasis in original). As indicated above, the agency deemed the appellant's Privacy Act request "perfected" in February 2017. Pursuant to its own regulations, the agency was required to "make a determination within 30 days to grant or deny a request for access in whole or in part." 29 C.F.R. § 71.4(a). Even assuming the appellant did not have knowledge of this specific regulation, a reasonable person in her position could have believed that the agency's 4-month delay between February 2017, when she perfected her request, and June 2017, when she received the agency's partial response, violated the Privacy Act or the agency's regulations. The Board has found that revelations concerning violations of the Privacy Act may constitute protected whistleblowing activities under 5 U.S.C. § 2302(b)(8). *See, e.g.*, *Herman v. Department of Justice*, 115 M.S.P.R. 386, ¶ 10 (2011); *Hupka v. Department of Defense*, 74 M.S.P.R. 406, 411 (1997). Further, here the appellant demonstrated that she believed the agency improperly delayed its response by emphasizing its delay in her June 14, 2017 email. 0793 IAF, Tab 10 at 14. Accordingly, we find that this disclosure is protected.

*Disclosure 4*

¶26    In disclosure 4, on June 21, 2017, the appellant reported that the DCRD Chief provoked, intimidated, and harassed her in the copy room earlier that day.[7] 0793 IAF, Tab 1 at 21, Tab 97 at 171. According to the appellant, the DCRD Chief entered the copy room while the appellant was alone preparing documents, walked behind her, stood between her and the copier, and told her she was taking

---

[7] This individual, whom we have also identified as the appellant's former first-level supervisor, was no longer supervising the appellant as of February 26, 2016. 0793 IAF, Tab 7 at 11.

up too much room and that she could not remain in the copy room. 0793 IAF, Tab 1 at 21, Tab 97 at 171. The appellant maintains that she reasonably believed this amounted to an abuse of authority because this incident followed a course of harassment by the DCRD Chief over nearly 5 years, and the DCRD Chief had previously engaged in a series of other alleged retaliatory behavior against her and had also committed a battery on the appellant by touching her arm in a February 2016 meeting. *Id.*

¶27 As an initial matter, we agree with the appellant that the administrative judge erred in concluding that the appellant could not have disclosed an abuse of authority because the DCRD Chief was not the appellant's supervisor at the time. ID at 20; PFR File, Tab 9 at 27. An abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to himself or preferred other persons. *Pasley v. Department of the Treasury*, 109 M.S.P.R. 105, ¶ 18 (2008). There is no requirement that the individual be in the appellant's chain of command.

¶28 Further, the Board has recognized that harassment or intimidation of other employees may constitute an abuse of authority. *E.g.*, *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 14 (2015); *Pasley*, 109 M.S.P.R. 105, ¶ 18. A supervisor's use of influence to denigrate other staff members in an abusive manner and to threaten the careers of staff members with whom he disagrees constitutes abuse of authority. *Pasley*, 109 M.S.P.R. 105, ¶ 18. On review, the appellant asserts that the administrative judge viewed her disclosures and allegations of harassment out of context, while also erroneously applying a de minimis standard. PFR File, Tab 9 at 25-28.

¶29 We disagree. Although the appellant may have subjectively felt harassed or intimidated, and therefore believed that she was disclosing an abuse of authority, she has not proven that a disinterested person with knowledge of the facts known to her would have believed that the DCRD Chief's actions amounted to

harassment, even considering the prior acts described, including touching her on the arm during a meeting and following her down a hallway. Moreover, notwithstanding the prior alleged events, the appellant acknowledges that she had virtually no interaction with the DCRD Chief for 16 months prior to the incident. 0793 IAF, Tab 97 at 47. Similarly, we find that a disinterested observer could not reasonably conclude that the DCRD Chief's actions amounted to a violation of the workplace violence policy.

*Disclosure 6*

¶30    This alleged disclosure pertains to the appellant's findings after conducting a quality control review of a National Bonding Review Project.[8] The appellant identified inconsistencies and inaccuracies that she concluded may have adversely affected the statistical data rates in a contractor's draft report. 0793 IAF, Tab 1 at 44; Tab 16 at 6. The appellant contends that this amounted to a disclosure of gross mismanagement. 0793 IAF, Tab 1 at 44. According to the appellant, the data was unusable, and her second-level supervisor admitted as much. *Id.* at 45. Finally, the appellant asserted that the project was irredeemable such that she reasonably believed the report was a gross waste of taxpayer funds. *Id.*

¶31    The administrative judge found that the appellant failed to prove that she reasonably believed that she was disclosing gross mismanagement because she merely identified possible errors and invited discussion of such errors, which did not rise to the level of gross mismanagement. ID at 23. He further found that she failed to prove that she reasonably believed that she disclosed a gross waste of funds given there was no discussion of any waste of funds. ID at 23. On review,

_____

[8] Section 2302(f)(2) of Title 5 imposes a heightened burden for disclosures made during the normal course of duties of an employee whose principal job functions are to regularly investigate and disclose wrongdoing. *See Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶¶ 10-14. We find that the appellant's alleged disclosure falls under 5 U.S.C. § 2302(b)(8) rather than 5 U.S.C. § 2302(f)(2) because her principal job function as a Senior Technical Advisor was not to regularly investigate and disclose wrongdoing. Rather, her primary job duties included providing technical and policy guidance on investigations of violations arising under the provisions of the Employee Retirement Income Security Act of 1974. 0793 IAF, Tab 1 at 73; 0190 Tab 6 at 12-19.

the appellant asserts that the administrative judge narrowly construed her disclosure and only considered the email and not the attached memorandum outlining the inconsistencies and errors in the project. PFR File, Tab 9 at 44; 0793 IAF, Tab 16 at 8-10. The record reflects that the appellant's memorandum did raise substantial problems with the project, such that the project was not included for submission in a report to the Employee Retirement Income Security Act of 1974 (ERISA) Advisory Council as originally intended. 0793 IAF, Tab 96 at 87-88, 92.

¶32 "Gross mismanagement" is more than de minimis wrongdoing or negligence; it means a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *See Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶ 24. The appellant has not identified the basis for any belief at the time she made her alleged disclosure that certain actions or inactions by management created a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. Additionally, although the appellant's alleged disclosure identified errors in the report, it did not disclose anything related to the expenditure of funds. 0793 IAF, Tab 16 at 6-10. Thus, we agree with the administrative judge that the appellant did not prove that she reasonably believed she disclosed gross waste or gross mismanagement. ID at 23.

*Disclosure 11*

¶33 The administrative judge found that the appellant's statement that she intended to disclose information to OSC constituted protected activity, but not a protected disclosure. ID at 24. On review, the appellant asserts that the administrative judge construed this disclosure too narrowly and failed to address her alleged disclosure that staff was hostile toward her due to her whistleblowing and that management was abusing its authority by excluding her from communications and work product that directly impacted her duties. PFR File, Tab 9 at 45, Tab 17 at 33.

¶34 On March 8, 2019, the appellant's first-level supervisor instructed the appellant not to copy a certain employee on emails about a project. 0793 IAF, Tab 17 at 34. The supervisor explained that he hoped to avoid future communication issues. *Id.* In an email response the appellant sent the same day, she expressed to her supervisor her belief that she was being further "isolate[d] [her] from communications with colleagues," resulting in her colleagues viewing her as a "problem." *Id.* at 33. This email constitutes disclosure 11. 0793 IAF, Tab 1 at 54-55.

¶35 The appellant argues on review that her contentious relationship with the employee that was the subject of her supervisor's March 8, 2019 instruction arose out of disclosure 8. PFR File, Tab 9 at 45. As relevant here, the administrative judge found that the appellant proved that disclosure 8, which revealed problems with the agency's National Bonding Review Project, was protected. ID at 25-26. To the extent that the appellant argues on review that she disclosed in her March 8, 2019 email that other employees were hostile to her due to disclosure 8, her email contains no such allegation. PFR File, Tab 9 at 45-46. The appellant generally asserted that her "views, analyses, and findings" on the project led to hostility, but she did not identify any specific statements as causing disagreement or claim that her statements to her colleagues constituted protected whistleblowing. 0793 IAF, Tab 17 at 33; *see Salerno*, 123 M.S.P.R. 230, ¶ 6.

¶36 The appellant also argues on review that the administrative judge should have found that her March 8, 2019 email disclosed that "management was abusing their authority [by] excluding [her] from communication and work product that directly impacted [her] duties." PFR File, Tab 9 at 45. The appellant stated in her email that her colleagues' hostility "impede[d] the information gathering necessary to complete this project," that a particular employee's "behavior and lack of cooperation continues to make this project more difficult than it needs to be," and that the decision to exclude her from communications "cost [her] unnecessary time and effort." 0793 IAF, Tab 17 at 33. These allegations fall

short of a claim that her supervisor acted arbitrarily or capriciously in a manner that adversely affects the appellant's rights or led to personal gain or advantage for himself or others. *See Pasley*, 109 M.S.P.R. 105, ¶ 18. Therefore, we discern no basis to disturb the administrative judge's determination that disclosure 11, while constituting a protected activity, was not a protected disclosure.

¶37    To the extent the appellant disclosed that she planned to report to OSC that she was being isolated from communication with colleagues, we find that the administrative judge properly considered this statement to be protected activity. 0793 IAF, Tab 17 at 33; ID at 24 n.12. The parties do not dispute this finding. "[C]ooperating with or disclosing information to the Inspector General . . . of an agency, or the Special Counsel" is protected activity under 5 U.S.C. § 2302(b)(9)(C)—irrespective of whether an individual had a reasonable belief that she was disclosing wrongdoing. *Pridgen*, 2022 MSPB 31, ¶ 62. Moreover, the Board has found that such protection extends to the appellant's notification of her intent to file a complaint. *See, e.g., Special Counsel v. Zimmerman*, 36 M.S.P.R. 274, 290-91 (1988) (holding that an employee who communicates to his supervisor his intention to file a grievance or an appeal is protected from subsequent reprisal based on the announcement of that intent under the umbrella of 5 U.S.C. § 2302(b)(9)), *reasoning corrected on other grounds by Hasler v. Department of the Air Force*, 79 M.S.P.R. 415 (1998). Thus, the appellant's statement to her supervisor regarding her intent to present her concerns to OSC was protected.

*Disclosure 16*

¶38    The appellant alleges that she disclosed an abuse of authority related to her supervisor's restriction of her situational telework. 0793 IAF, Tab 1 at 59-60, Tab 17 at 133. The record reflects that this disclosure came about after the appellant requested to switch a telework day, which her supervisor approved, stating "Ok, but going forward, let's try to stick to your telework days." 0793 IAF, Tab 17 at 131. The administrative judge found that no actual

restriction to her telework occurred or was even suggested. ID at 36. On review, the appellant asserts that it was a legal error to demand proof that a restriction occurred and that the proper standard is whether she reasonably believed she was disclosing an abuse of authority. PFR File, Tab 9 at 43. Notwithstanding such an argument, we agree with the administrative judge that a disinterested observer would not have construed the exchanged communications as imposing any new restrictions on the appellant's ability to telework.

*Disclosure 17*

¶39 Regarding this alleged disclosure, the appellant contends that she informed a coworker, referred to here as employee A, that it was improper for him, as a bargaining unit employee, to accept authority as Acting Division Chief, including the authority to grant or deny leave requests and to be privy to sensitive personnel information such as medical information or requests for official time. 0793 IAF, Tab 1 at 61. She alleged that this amounted to a disclosure of an abuse of authority and the appearance of impropriety in violation of 5 C.F.R. § 2635.101(b)(14).[9] 0793 IAF, Tab 1 at 62. The administrative judge found that the appellant failed to show that she reasonably believed she was disclosing wrongdoing because supervisors and managers have discretion to delegate authority as they see fit. ID at 38.

¶40 The record reflects that the appellant requested that her coworker "identify the law, rule, regulation, or written Agency policy that authorizes [the appellant's] peers to act as [her] 'supervisor' for two or three days at a time" and to approve her use of sick leave. 0793 IAF, Tab 15 at 125-27. To the extent the appellant claimed below, and realleges on review, that she disclosed to

---

[9] The administrative judge's failure to address the appellant's claim that employee A was violating 5 C.F.R. § 2635.101(b)(14) does not impact the outcome of this appeal. 0793 IAF, Tab 1 at 62. That provision states that, "[e]mployees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in this part." 5 C.F.R. § 2635.101(b)(14). The appellant has not explained how or why the delegated authority would create the appearance of violating any ethics standards.

employee A that he lacked delegated supervisory authority, we are not persuaded. PFR File, Tab 9 at 56; 0793 IAF, Tab 97 at 148. The appellant told employee A that she was "not at this point challenging the delegation of authority" to approve her leave as Acting Division Chief. 0793 IAF, Tab 15 at 125-26. Even assuming the appellant was attempting to disclose that the delegation was improper, a Federal officer is generally presumed to have the authority to redelegate his statutory authority to a subordinate. *See Cronin v. U.S. Postal Service*, 2022 MSPB 13, ¶ 18 (citing *United States Telecom Association v. Federal Communications Commission*, 359 F.3d 554, 565 (D.C. Cir. 2004)). The appellant, who has the burden of proof, has not explained why she reasonably believed otherwise.[10]

¶41    The appellant further argues on review that the applicable collective bargaining agreement (CBA) provides that an employee in the bargaining unit, like employee A, could not accept delegated authority. PFR File, Tab 9 at 56. Her disclosure itself did not allege a CBA violation, and the administrative judge did not address such a claim. 0793 IAF, Tab 15 at 125-27. However, he acknowledged that, in her complaint to OSC, the appellant asserted, regarding her disclosure, that one bargaining unit employee could not accept authority to grant or deny a benefit to another such employee. ID at 37; 0793 IAF, Tab 1 at 61. The CBA provision she relies on cannot reasonably be read to contain such a prohibition. PFR File, Tab 9 at 56 (citing 0793 IAF, Tab 38 at 22-23). It does not prescribe the actions of individuals, but rather excludes supervisor and managers from the bargaining unit. 0793 IAF, Tab 38 at 22. Thus, we agree with

---

[10] The appellant disputes the administrative judge's finding that employee A did not actually have the authority to approve leave requests but merely to memorialize them for later approval. PFR File, Tab 9 at 56; ID at 37-38; 0793 IAF, Tab 15 at 126, Tab 96 at 92-93. This argument fails for the same reason. Whether the appellant believed employee A could approve versus memorialize her leave requests concerns the extent of his authority, which the administrative judge properly found a reasonable person in the appellant's position could not have doubted.

the administrative judge that the appellant failed to establish that she reasonably believed that this disclosure amounted to wrongdoing under section 2302(b)(8).

The administrative judge properly found that the appellant did not prove that disclosures 1 and 2 in the 0190 appeal were protected but should have found that disclosure 3 constituted protected activity.

¶42    The administrative further found that the appellant failed to meet her burden regarding disclosures 1-3 raised in the 0190 appeal.  ID at 39-51.  On review, the appellant asserts that such findings were erroneous.  PFR File, Tab 9 at 58-63.

*Disclosure 1*

¶43    Regarding disclosure 1, in October 2018, after the appellant's first-level supervisor tentatively rated her as "Meet" on her fiscal year 2018 performance appraisal, the appellant advised her first- and second-level supervisors that she "was not assigned sufficient work under rating Element #3 to justify being rated in that element."   0190 IAF, Tab 1 at 6, Tab 6 at 4-5.   The appellant's performance standards reflect that she could be rated at any one of four performance levels, of which "Meet" was the second highest, and "Exceed" was the highest.  0190 IAF, Tab 6 at 12.  Subsequently, on November 1, 2018, the agency finalized her performance appraisal, stating she was receiving "No Rating" in Element #3.  *Id.* at 12, 19.  This resulted in the appellant's summary rating increasing from the prior tentative rating of "Highly Effective" to "Exemplary."  0793 IAF, Tab 96 at 93-94; 0190 IAF, Tab 1 at 6, Tab 6 at 12.

¶44    The administrative judge described 0190 disclosure 1 as a difference of opinion regarding what amount of work constituted sufficient work to be rated in a particular performance element, and he concluded that the appellant's disclosure was a personal grievance that did not rise to the level of a protected disclosure under *Mc Corcle*.  ID at 40-41.  Notwithstanding his reliance on *Mc Corcle*, the administrative judge further concluded that the appellant did not reasonably believe that she disclosed an abuse of authority or a violation of law, rule, or regulation.  *Id.*  On review, the appellant does not provide any specific argument

disputing the administrative judge's finding. PFR File, Tab 9 at 58. Instead, she argues that the administrative judge "omitted the fact that [the agency] raised" her rating. *Id.* However, the administrative judge referenced the increased rating in the initial decision. ID at 40. We agree with the administrative judge that the appellant failed to show that a reasonable person in her position would have believed that rating her on Element #3 was an abuse of authority or a violation of law.

*Disclosure 2*

¶45 In an email to her first-level supervisor on November 1, 2018, and in a follow-up discussion with her second-level supervisor on November 5, 2018, the appellant asserted that her proposed fiscal year 2019 standards violated various laws, regulations, and the CBA because the standards were unmeasurable, subjective, and conduct based. 0190 IAF, Tab 1 at 6, Tab 6 at 56-60. The focus of her alleged disclosure was proposed "Result #5." 0190 IAF, Tab 6 at 59-60. Result #5 concerned "coalition building and communication," and measured achievement in terms of interpersonal skills such as maintaining "effective communication and cooperative working relationships." 0190 IAF, Tab 7 at 13. The administrative judge found that no disinterested observer would reasonably believe that the appellant disclosed wrongdoing. ID at 47. To the contrary, he found that issues of misconduct and performance overlap and a reasonable person would expect that interpersonal skills would be part of a performance rating. ID at 50.

¶46 On review, the appellant reiterates her belief that her performance standards were "illegal because they rate[d] 'behavior verses performance.'" PFR File, Tab 9 at 58; 0190 IAF, Tab 7 at 50; Tab 6 at 56-60. According to the appellant, the administrative judge did not consider a grievance of her fiscal year 2014 performance evaluation, in which she alleged that Result #5 was illegal and the agency admitted as much. PFR File, Tab 9 at 58; 0793 IAF, Tab 79 at 10-11, 41. In support of this claimed admission, the appellant cites to communications

between agency officials in spring 2015 discussing settlement of a grievance the appellant filed over her fiscal year 2014 performance rating. PFR File, Tab 9 at 58; 0793 IAF, Tab 99 at 99. The Director of ORI acknowledged in one of these emails that he had been advised by human resources staff that it was probably true, as asserted by the appellant's union, that at least one of her performance elements, specifically Result #5, was "flawed." 0793 IAF, Tab 79 at 37. In a second email, he stated that a Human Resources Specialist "ha[d] concerns about the element inviting a challenge of rating based on 'behavior versus performance.'"[11] *Id.* at 36. We find that the agency's stated concern that a rating on Result #5 could be challenged does not amount to an admission by the agency that the standard violated a law, rule, or regulation.

¶47    We also agree with the administrative judge that interpersonal skills are a common aspect of a performance rating and a disinterested observer could not reasonably believe this evidenced wrongdoing. Neither the CBA nor agency regulations prohibit rating performance based on interpersonal relationships. 0190 IAF, Tab 6 at 25, 52. Nor does chapter 43 of Title 5 or its implementing regulations. 5 U.S.C. § 4302; 5 C.F.R. § 430.102; *see* 5 C.F.R. § 430.203 (stating that "[a] performance standard may include . . . manner of performance"). Indeed, as the appellant noted in making her disclosure, Congress explicitly recognized "courtesy demonstrated to the public," which is evidently behavior-based, as a valid basis for a performance standard. 0190 IAF, Tab 6 at 59; 5 U.S.C. § 4302(c)(1). Further, although the appellant argues that standards must be "objective," such objectivity is required only "to the maximum extent feasible." 0190 IAF, Tab 6 at 52, 57; *see* 5 U.S.C. § 4302(c)(1). Accordingly, we decline to disturb the administrative judge's determination that disclosure 2 is not protected.

---

[11] While Results #5 was not the same on the appellant's fiscal year 2014 and 2019 standards, both versions concerned interpersonal communications. 0793 IAF, Tab 79 at 25; 0190 IAF, Tab 7 at 13.

*Disclosure 3*

¶48    For fiscal year 2019, the appellant's first-level supervisor tentatively rated the appellant as "Fully Successful" on Results #1 and #5 of her performance plan. 0190 IAF, Tab 7 at 8-10, 13; 0793 IAF, Tab 96 at 94.  Her fiscal year 2019 performance plan again contained four potential rating levels for each result. 0190 IAF, Tab 7 at 9.  The highest performance level was "Outstanding," and the next highest performance level was "Fully Successful."  *Id.*  In an email the appellant sent on October 28, 2019, to her second-level supervisor, which constitutes disclosure 3, the appellant disagreed with her tentative ratings on Results #1 and #5.  *Id.* at 47.  She asserted that her performance standards improperly relied on "subjective personality-based elements to falsely rate [her] *work performance*."  *Id.* (emphasis in original).  These allegedly improper performance components including "work[ing] cooperatively and in coordination" with others, and "coalition building."  *Id.*  The administrative judge found that the appellant could not reasonably believe that the agency could not rate her on her interpersonal relations or that her performance warranted a higher rating concerning such relations.  ID at 50-51.  On review, the appellant challenges this finding.  PFR File, Tab 9 at 59-60.

¶49    Although we agree with the administrative judge that the appellant did not prove that she reasonably believed she was disclosing wrongdoing under section 2302(b)(8), we nonetheless find that the appellant's email constituted protected activity.  In the subject line of her October 28, 2019 email, the appellant wrote, "New OSC Complaint – Retaliatory Performance Appraisal." 0190 IAF, Tab 7 at 47.  She concluded her email by stating that she intended to raise her performance appraisal to OSC "so that [she could] include this personnel action in the pending MSPB proceeding."  *Id.*  Filing an OSC complaint is a protected activity under 5 U.S.C. § 2302(b)(9)(C).  *Pridgen*, 2022 MSPB 31, ¶¶ 61-62. Moreover, the Board has found that such protection extends to the appellant's notification of her intent to file a complaint.  *See Zimmerman*, 36 M.S.P.R.

at 290-91. Therefore, we conclude that the appellant's October 28, 2019 email constituted protected activity, and we modify the initial decision accordingly.

<u>The administrative judge correctly identified the personnel actions at issue, except the denial of official time, which we find amounted to a threat to take a personnel action.</u>

¶50 The appellant raised 12 alleged personnel actions in the 0793 appeal and four alleged personnel actions in the 0190 appeal. ID at 2-4, 8. The administrative judge found that the appellant proved that the following constituted personnel actions under 5 U.S.C. § 2302(a)(2)(A): a July 23, 2017 directed reassignment to OE; the denial of requests for reassignment to the Division of Health Investigations (DHI) on three occasions from August 18 to September 2017, January to November 2018, and August 2018 to January 2019; the denial of an opportunity to serve as an Acting Division Chief via a short- or long-term detail; a May 20, 2019 threat to lower her performance evaluation; and a lowered fiscal year 2019 performance evaluation.[12] ID at 61-87.

¶51 The administrative judge found that the appellant failed to prove the remaining matters amounted to personnel actions. ID at 53-56. On review, the appellant reasserts that she was subjected to additional personnel actions.

¶52 Regarding the appellant's claim that the agency's failure to process her Privacy Act requests (0793 personnel action 4) amounted to a significant change in working conditions, the administrative judge found that there was no evidence that the agency refused to process her request. ID at 55. As set forth above in our analysis of disclosure 3 regarding this matter, we agree with the administrative judge because the record reflects that the agency was processing the appellant's request. Regarding the appellant's claim that in January 2019 she was denied a request for reassignment to DHI (0793 personnel action 10), the

---

[12] The appellant withdrew what the administrative judge referenced as personnel actions 2.5, 2.7, 3, and 11 in the 0793 appeal and 2 and 3 in the 0190 appeal. ID at 8 n.6, 53 n.16. The administrative judge did not make findings on these personnel actions, and the appellant does not reraise them on review. Therefore, we decline to consider them further.

administrative judge found that although the appellant may have felt she requested a reassignment, the agency witnesses did not perceive a statement the appellant made about being reassigned as making a specific request for reassignment. ID at 55. The record supports this finding. 0793 IAF, Tab 96 at 98, 100; PFR File, Tab 21 at 58, 60.

¶53    Regarding the appellant's claim that she was subjected to a personnel action when the agency denied her request for official time in November 2019 (0190 personnel action 4), the administrative judge found that the denial of official time does not amount to a personnel action, and in any event, the agency granted all of the appellant's official time requests. ID at 56. On review, the appellant disputes the administrative judge's reasoning that no actual denial of an official time request occurred after a November 2019 email advised her that the agency could no longer approve future requests for official time. PFR File, Tab 9 at 39; 0190 IAF, Tab 8 at 18-20. The appellant asserts that the email amounts to, at a minimum, the threat to deny her subsequent requests. PFR File, Tab 9 at 39. We disagree with the administrative judge that the denial of official time could never amount to a personnel action.

¶54    The Board generally has held that the denial of official time to pursue a Board appeal is not a personnel action because it is not a decision concerning benefits. *Marren v. Department of Justice*, 50 M.S.P.R. 369, 372 (1991). However, the Board has held that the denial of administrative leave may amount to a denial of a benefit if the agency denied such a request when it had a general practice of granting such leave. *See Arauz v. Department of Justice*, 89 M.S.P.R. 529, ¶ 19 (2001). Although *Arauz* concerned administrative leave, the Board noted that official time and administrative leave are similar in that they do not accrue automatically like annual and sick leave. *Id.*, ¶ 18. Nonetheless, we agree with the administrative judge that the agency did not deny the appellant official time. ID at 56. Notwithstanding the November 22, 2019 email informing the appellant that the agency would no longer grant official time, on December 4,

2019, the agency clarified that it would continue to grant a reasonable amount of official time after considering the activities/reasoning specified by the appellant. 0190 IAF, Tab 9 at 12-13. The appellant acknowledges as much and that she was not denied any official time. 0793 IAF, Tab 83 at 51-52.

¶55 Although the agency did not deny her any official time, we agree with the appellant that the agency's November email amounted to a threat to deny her official time because it had provided her with official time in the past. 0190 IAF, Tab 9 at 20; *see* 5 U.S.C. § 2302(b)(8) (stating that an employee "shall not . . . take . . . *or threaten to take* . . . a personnel action . . . because of" disclosures of the identified categories of wrongdoing) (emphasis added); *Spivey v. Department of Justice*, 2022 MSPB 24, ¶ 7 (acknowledging that the mere threat of disciplinary action can amount to a personnel action). Accordingly, we modify the initial decision to find that she was subjected to a threat to deny her official time.

¶56 Regarding the appellant's claim that she was subjected to a significant change in working conditions based on numerous agency actions, the administrative judge found that the relevant actions were not significant within the meaning of 5 U.S.C. § 2302(a)(2)(A)(xii). ID at 54. Pursuant to section 2302(a)(2)(A)(xii), a personal action includes "any . . . significant change in duties, responsibilities, or working conditions." In determining whether an appellant has suffered a "significant change" in her duties, responsibilities, or working conditions, the Board must consider the alleged agency actions both collectively and individually. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 16. The administrative judge found that, even if true, the appellant's claims that she was excluded from meetings and had her work reviewed, alone or cumulatively, did not amount to a significant change. ID at 54-55. On review, the appellant contends that the administrative judge improperly considered her allegations individually instead of cumulatively. PFR File, Tab 9 at 37. We disagree.

¶57    The administrative judge properly considered the claims cumulatively, excluding claims that pertained to the appellant's July 23, 2017 directed reassignment, which he found was a distinct personnel action. To the extent the appellant alleges that her second-level supervisor denied her request for a private office in 2018, her first-level supervisor also denied her request for a private office in 2019, and that her first-level supervisor restricted her use of situational telework by requesting that she try to stick to her regular telework days, 0793 IAF, Tab 1 at 59-61, Tab 16 at 84, Tab 17 at 133-34, we modify the initial decision to find that, even considering such claims, the appellant has not shown that the agency's actions had a significant impact on the overall nature or quality of her working conditions. *Cf. Skarada*, 2022 MSPB 17, ¶¶ 16, 26-29 (finding that the appellant failed to prove by preponderant evidence that his allegations of a hostile work environment significantly and practically impacted his working conditions when he alleged that his supervisor failed to communicate with him, avoided him or walked away from him, was unresponsive to his requests for guidance, did not support his request for a position upgrade, and yelled at him and excluded him from meetings).

¶58    Moreover, the appellant has not explained how her duties were significantly changed outside of the July 23, 2017 directed reassignment to the OE, which the administrative judge agreed was a personal action. *See Skarada*, 2022 MSPB 17, ¶ 23 (stating that to prove that the agency subjected him to a "significant change" in duties, responsibilities, or working conditions, the appellant must provide sufficient information and evidence to allow the Board to determine whether the agency's alleged action or actions were "significant").

¶59    In sum, we agree with the administrative judge that the appellant proved the following incidents amounted to personnel actions:  a July 23, 2017 directed reassignment to OE; the denial of requests for reassignment to DHI on three occasions from August 18 to September 2017, January to November 2018, and August 2018 to January 2019; the January to October 2018 denial of an

opportunity to serve as an Acting Division Chief via a short- or long-term detail; a May 20, 2019 threat to lower her performance evaluation; and an October 28, 2019 lowered fiscal year 2019 performance evaluation. We further find that the appellant proved that the November 22, 2019 threat to deny her official time was a personnel action.

The appellant proved contributing factor as to matters we have now found protected, i.e., disclosures 1-3 in the 0793 appeal, disclosure 3 in the 0190 appeal, and the personnel action of threatening to deny official time.

¶60    As noted above, to establish her prima facie case of whistleblower reprisal, the appellant must prove that a protected disclosure or activity was a contributing factor in a personnel action taken against her. *Skarada*, 2022 MSPB 17, ¶ 6. One way to prove contributing factor is by the knowledge/timing test under which an appellant may show that her protected disclosure or activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that (1) the official taking the personnel action knew of the disclosure or activity; and (2) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *Smith v. Department of the Army*, 2022 MSPB 4, ¶ 19. The Board has held that personnel actions taken within 1 to 2 years of the protected disclosure or activity satisfy the timing prong of the knowledge/timing test, but those that take place more than 2 years after the disclosure or activity are too remote to satisfy this test. *Pridgen*, 2022 MSPB 31, ¶ 63.

¶61    The administrative judge found that disclosures 1 and 3 in the 0793 appeal and disclosure 3 in the 0190 appeal were not protected and therefore did not consider whether they were a contributing factor in a personnel action. Additionally, regarding disclosure 2 in the 0793 appeal, the appellant's July 12, 2016 email to OSC regarding obstruction of the FPS investigation, we have concluded it was a protected activity under section 2302(b)(9)(C). Because we

have found these matters were protected, we now address whether the appellant proved contributing factor.

¶62 Disclosure 3 in the 0190 appeal occurred on October 28, 2019, after all of the alleged personnel actions occurred except for the agency's November 22, 2019 threat to deny the appellant official time. Thus, we only address contributing factor regarding this personnel action. *See Sherman v. Department of Homeland Security*, 122 M.S.P.R. 644, ¶ 8 (2015) (finding that a disclosure that occurs after the personnel action at issue was taken cannot be considered a contributing factor in that personnel action). We find that the appellant has met the knowledge/timing test because the November 22, 2019 threat to deny official time occurred within a month of the October 28, 2019 disclosure to her second-level supervisor that she intended to file an OSC complaint regarding her performance appraisal. Regarding knowledge, although the disclosure was made to the appellant's second-level supervisor, we find that the appellant's first-level supervisor, who threatened to deny the appellant's official time, would have been aware of the appellant's dissatisfaction with the rating and intent to file with OSC because he issued the rating at issue. Further, that rating was approved by the appellant's second-level supervisor, to whom the disclosure was made.

¶63 Disclosure 1 in the 0793 appeal was made to, among others, the Chief Human Capital Officer, OPPEM, who was involved in the appellant's directed reassignment and the threat to deny her official time. The directed reassignment occurred within 1 year and thus satisfies the knowledge/timing test. The threat to deny the appellant official time, however, occurred close to 3 years later, which is too remote to satisfy the knowledge/timing test. *See Salinas v. Department of the Army*, 94 M.S.P.R. 54, ¶ 10 (2003) (finding that a reasonable person could not conclude that a disclosure was a contributing factor in agency actions commencing 2 1/2 years later).

¶64 In addition to the knowledge/timing test, however, there are other possible ways for an appellant to satisfy the contributing factor standard. *See Dorney v.*

*Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). The Board will consider any relevant evidence on the contributing factor question, including the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the officials involved in the personnel action, and whether such individuals had a desire or motive to retaliate against the appellant. *Id.*, ¶ 15. Regarding the strength of the evidence, as discussed below in our clear and convincing analysis, we find that the agency, with guidance from the Chief Human Capital Officer, granted the appellant extensive official time following December 2016, when the appellant made disclosure 1. The agency presented strong evidence that the reason it threatened not to approve further official time in November 2019 was that it legitimately questioned whether it was appropriate to provide indefinite official time "on a full-time basis" until the end of a hearing without further details. 0793 IAF, Tab 73 at 21; 0190 IAF, Tab 9 at 18. Regarding motive to retaliate, the appellant's disclosure 1 was largely directed at the Director of the Office of Health Plan Standards and Compliance Assistance, who made the decision to appoint the two individuals as acting deputy directors. 0793 IAF, Tab 74 at 32. It is not clear whether, prior to making such a decision, the Director consulted with human resources individuals, or the Chief Human Capital Officer, such that he would have had a motive to retaliate. Accordingly, we find that the appellant has not established that disclosure 1 was a contributing factor in the threat to deny her official time.

¶65      Regarding disclosure 2 in the 0793 appeal, the appellant's July 12, 2016 disclosure to OSC that certain witnesses had obstructed justice during the FPS investigation, the appellant has not shown that any of the officials involved in the subsequent personnel actions had knowledge of this protected activity. However, the relevant officials were aware of the disclosures also made to FPS in disclosure 2, which the administrative judge found protected, because FPS conducted a second investigation and interviewed many of the relevant officials, including the appellant's second- and third-level supervisors and the Chief

Human Capital Officer, who thereafter took personnel actions against the appellant. 0793 IAF, Tab 74 at 63. Thus, the appellant established that disclosure 2 to FPS was a contributing factor in the agency's personnel actions.

¶66 Disclosure 3 in the 0793 appeal, which the appellant made on June 14, 2017, concerned an alleged Privacy Act violation. The appellant repeated this disclosure, which she made to SOL, to the Deputy Assistant Secretary of EBSA, the official who decided to reassign the appellant approximately 1 month later. 0793 IAF, Tab 10 at 14; Tab 1 at 71. Thus, the appellant established that this disclosure was a contributing factor in her directed reassignment. There is no evidence that the individuals involved in the remaining personnel actions were aware of disclosure 3. Moreover, as described below, there is strong evidence in support of such personnel actions, and the relevant agency officials lacked a motive to retaliate based on disclosure 3, which did not personally name them. Thus, the appellant did not establish that disclosure 3 was a contributing factor in the remaining personnel actions.

¶67 Finally, we find that the appellant proved contributing factor as to the agency's threat to deny her official time on November 22, 2019, which, as discussed above, we have found was a personnel action. The appellant made many of her prior disclosures directly to her first-level supervisor and the Chief Human Capital Officer, OPPEM, within 2 years of their questioning of her entitlement to official time on November 22, 2019.

<u>We modify the initial decision to find that the appellant proved that her December 2016 IG report was a contributing factor in her directed reassignment.</u>

¶68 The administrative judge generally found that the appellant proved that her protected disclosures and activities were a contributing factor in a personnel action. ID at 56-58. However, he observed that disclosures or activities that occurred after a personnel action could not serve as a contributing factor for those actions. ID at 58-59. As an example, he concluded that the only protected activity that could serve as a contributing factor for the appellant's July 23, 2017

directed reassignment was her prior 0437 Board appeal. ID at 59. The appellant does not challenge this finding except as it concerns her directed reassignment. Therefore, our discussion will be similarly focused. *See* 5 C.F.R. § 1201.115 (stating that the Board normally will consider only issues raised in a timely filed petition for review or in a timely filed cross petition for review).

¶69    As to her reassignment, the appellant argues that the administrative judge erred because 0793 disclosures 1 through 4 preceded her reassignment. PFR File, Tab 9 at 19. However, the administrative judge did not conclude that such disclosures did not contribute to her reassignment. Rather, he concluded that, of the appellant's protected activities under section 2302(b)(9), the only one that preceded the appellant's directed reassignment, and thus could be a contributing factor, was her prior 0437 Board appeal.[13]  ID at 59. However, we modify the initial decision to find that the appellant also proved that her December 2016 IG report was a contributing factor to her directed reassignment because her third-level supervisor was aware of her IG complaint, which occurred approximately 7 months prior to her reassignment. 0793 IAF, Tab 96 at 83.

The administrative judge properly found that the agency proved by clear and convincing evidence that it would have taken the same actions absent the appellant's protected disclosures and activity.

¶70    Even if an appellant establishes that she made a protected disclosure or engaged in protected activity that was a contributing factor to a personnel action, the Board will not order corrective action if the agency can show by clear and convincing evidence that it would have taken the action absent the protected disclosures or activity. 5 U.S.C. § 1221(e)(2); *Karnes v. Department of Justice*, 2023 MSPB 12, ¶ 23. Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the

---

[13] The administrative judge found that the appellant's alleged disclosures 7, 9, 11, 12, and 13 in the 0793 appeal constituted protected activities, but that they could not have been a contributing factor in her directed reassignment because they took place after the reassignment. 0793 IAF, Tab 1 at 47, 54-56; *see Sherman*, 122 M.S.P.R. 644, ¶ 8. We discern no basis to disturb this finding.

allegations sought to be established; it is a higher standard than the "preponderance of the evidence" standard. *Sutton v. Department of Justice*, 94 M.S.P.R. 4, ¶ 18 (2003), *aff'd per curiam*, 97 F. App'x 322 (Fed. Cir. 2004); 5 C.F.R. § 1209.4(e).

¶71 In determining whether an agency has met this burden, the Board will consider all of the relevant factors, including the following ("*Carr* factors"): (1) the strength of the agency's evidence in support of the action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Karnes*, 2023 MSPB 12, ¶ 24 (citing *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999)). In considering the second *Carr* factor, in addition to any individual motive to retaliate by the agency managers involved in the decision, the Board must fully consider whether a motive to retaliate can be imputed to the agency officials involved and whether those officials possessed a professional or institutional motive to retaliate because the protected disclosures and activities implicated agency officials and employees in general. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶¶ 14-15; *see Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012). Regarding the third *Carr* factor, the absence of evidence concerning the agency's treatment of similarly situated nonwhistleblowers, while not necessarily "fatal to the agency," cannot weigh in its favor. *Rickel v. Department of the Navy*, 31 F.4th 1358, 1365-66 (Fed. Cir. 2022) (citing *Whitmore*, 680 F.3d at 1374); *Soto*, 2022 MSPB 6, ¶ 18 (citations omitted). The agency's failure to produce existing relevant evidence "may be at [its] peril." *Soto*, 2022 MSPB 6, ¶ 18 (quoting *Whitmore*, 680 F.3d at 1374).

¶72 The Board does not view the *Carr* factors as discrete elements, each of which the agency must prove by clear and convincing evidence. *Karnes*, 2023 MSPB 12, ¶ 24. Rather, the Board will weigh the factors together to

determine whether the evidence is clear and convincing as a whole. *Id.* The Board must consider all of the evidence presented, including evidence that detracts from the conclusion that the agency met its burden. *Whitmore*, 680 F.3d at 1368.

*Directed Reassignment*

¶73    On July 23, 2017, the Deputy Assistant Secretary of EBSA, the appellant's third-level supervisor, directed the appellant's reassignment to OE after receiving advice from the Chief Human Capital Officer, OPPEM, and the Director of OPPEM. 0793 IAF, Tab 1 at 71, Tab 96 at 81. The administrative judge found that the agency had strong evidence supporting its decision to reassign the appellant following her continued friction with others in the office and the conflict with the DCRD Chief, specifically the June 21, 2017 incident in which the appellant alleged that the DCRD Chief harassed her in the copy room and called FPS.[14] ID at 68. The administrative judge found the record replete with evidence that the appellant had difficulty working with other managers and employees. ID at 68. The administrative judge further found that the Deputy Assistant Secretary of EBSA could have had an institutional or professional motive to retaliate, but the record otherwise contained no strong evidence of any such retaliatory motive. ID at 69. Finally, he found that, to the extent the appellant's former first-level supervisor was a proper similarly situated nonwhistleblower comparator, the agency was justified in exercising its discretion to reassign the appellant rather than a supervisor to avoid the impact of a vacant supervisory position and because the Deputy Assistant Secretary and the Chief Human Capital Officer feared reassigning the supervisor would not have ended the appellant's ongoing workplace disruptions with other employees. ID at 69.

---

[14] In so finding, the administrative judge credited the explanation provided by the Deputy Assistant Secretary of EBSA concerning the reasons for his decision to reassign the appellant. ID at 68. On review, the appellant repeatedly asserts that this declaration was an unsigned "faux" declaration drafted by an agency attorney. PFR File, Tab 9 at 15-17, 29. We address such an argument below and find it unavailing.

¶74　　On review, the appellant asserts that the administrative judge erred in applying an improper standard when he concluded that the reasons for the directed reassignment were a reasonable and plausible exercise of managerial discretion instead of applying a clear and convincing analysis.[15]  PFR File, Tab 9 at 29.  We construe the administrative judge's findings as tantamount to concluding that the agency had legitimate reasons for the directed reassignment.  *See Smith*, 2022 MSPB 4, ¶ 23 (acknowledging that when the personnel action at issue is not disciplinary in nature, the first *Carr* factor does not apply straightforwardly and it is appropriate to consider the broader question of whether the agency had legitimate reasons for its action).  We discern no error in such a finding.

¶75　　The record reflects that the agency was concerned that the appellant had called FPS four times and needed to do something to address the appellant's concern that she did not feel safe working with the DCRD Chief.  0793 IAF, Tab 82 at 5.  After the June 21, 2017 incident, the agency attempted to temporarily keep the two individuals separated but needed a long-term solution, which involved moving either the appellant or the DCRD Chief.  *Id.*  As the administrative judge found, the agency did consider moving the DCRD Chief but found it less appealing because it would have left a vacant Division Chief position and it was unlikely to improve the situation given that the appellant had complained about other employees in addition to the DCRD Chief.  0793 IAF, Tab 82 at 5; ID at 69.  The administrative judge acknowledged that the appellant disagreed with her new assignment and, in his words, found "many of her new co-workers as intolerable as the ones she left behind."  ID at 67-68.

---

[15] The appellant also recounts various evidence the administrative judge did not mention.  PFR File, Tab 9 at 30.  However, an administrative judge's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision.  *Mithen v. Department of Veterans Affairs*, 122 M.S.P.R. 489, ¶ 14 (2015), *aff'd per curiam*, 652 F. App'x 971 (Fed. Cir. 2016).

¶76     On review, the appellant disputes that she continued to have friction in the workplace following her reassignment, arguing that any problems with her new coworkers were due to their resentment caused by her continued whistleblowing. PFR File, Tab 9 at 32. To the extent the appellant argues that incidents occurring after her reassignment cannot serve as a basis for that action, we agree. However, we do not interpret the administrative judge's observation as reliance on these later events, and we therefore discern no error.

¶77     We acknowledge the appellant's argument that the DCRD Chief also had conflicts with employees, *id.* at 34; however, the agency presented evidence that it considered significant that the appellant had contacted FPS four times in a little over a year, 0793 IAF, Tab 82 at 5. The appellant also disputes the administrative judge's findings that the agency's actions were taken to address the urgent deteriorating situation and asserts there is "*zero* evidence supporting" such a finding. PFR File, Tab 9 at 34 (emphasis in original). However, the record reflects that the agency's actions were taken in part in response to the appellant's email to her supervisor following the incident stating she did "not feel physically safe" coming to work in the office with the DCRD Chief. 0793 IAF, Tab 82 at 5, 99. Therefore, we discern no error in the administrative judge's observation that the situation required swift resolution.

¶78     Finally, the appellant raises various arguments concerning the merits of the agency's decision to reassign her, including that she could have been reassigned to another more desirable or more suitable office. PFR File, Tab 9 at 31-32. However, in an IRA appeal, the Board lacks jurisdiction to adjudicate the merits of or the procedures used to effect the agency's underlying personnel action; rather, the relevant inquiry is whether the agency had strong evidence to support its personnel actions. *See, e.g.*, *Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 15 (2010) (observing, in an IRA appeal, that an agency may direct an employee's reassignment, without a reduction in pay or grade, in a manner consistent with its rules and regulations and any applicable CBA, as long

as the reassignment is based on legitimate management reasons); *Ramos v. Department of the Treasury*, 72 M.S.P.R. 235, 240 (1996) (stating that the Board lacks the authority in an IRA appeal to adjudicate the merits of the underlying personnel action; rather, it is limited to adjudicating the whistleblower allegations). Thus, such arguments fail to establish error in the administrative judge's analysis.

¶79 On review, the appellant asserts that the administrative judge improperly found that the Deputy Assistant Secretary had no personal motive to retaliate. PFR File, Tab 9 at 29; ID at 68. We agree. The record reflects that the Deputy Assistant Secretary was the subject of several of the appellant's alleged disclosures and protected activities, and thus, he could have had a personal motive to retaliate. Thus, we modify the initial decision to find that the Deputy Assistant Secretary had a motive to retaliate. Moreover, the Chief Human Capital Officer, who advised the Deputy Assistant Secretary regarding his decision to reassign the appellant, also could have had a motive to retaliate because he was personally implicated by the appellant's disclosure 2. 0793 IAF, Tab 8 at 6. Moreover, both could have had an institutional motive to retaliate. Nonetheless, considering the agency's concerns regarding the inability of the appellant and the DCRD Chief to work together following the July 21, 2017 incident, we find that the agency's legitimate reasons for its action outweigh any motive to retaliate.

*Threat to deny the appellant official time*

¶80 Next, we modify the initial decision to find that the agency proved by clear and convincing evidence that it would have questioned continuing to provide the amounts of official time it had been providing absent the appellant's whistleblowing. We acknowledge that the official time the appellant was requesting was, at least in part, to pursue her protected activity of pursuing her claims in the 0793 Board appeal, of which the agency was aware. Therefore, the agency could have had a motive to retaliate based on such protected activity. Additionally, the appellant's first-level supervisor and the Chief Human Capital

Officer could have had a motive to retaliate based on the appellant's other prior disclosures, of which they were aware and of which they were the subjects. For example, many of the appellant's protected disclosures in late 2018 and 2019 expressed dissatisfaction with her first-level supervisor's actions and notified him that she intended to file OSC complaints regarding such actions, including denying her a private office, isolating her from communications with colleagues, and issuing her a low performance appraisal rating. Additionally, the Chief Human Capital Officer could have had a motive to retaliate based on the appellant's disclosure that her directed reassignment was a violation of law.

¶81    However, throughout 2019, the appellant's first-level supervisor, upon guidance from the Chief Human Capital Officer, had been granting the appellant extensive official time, including after he learned in September 2019 that the appellant had filed her 0793 appeal, which named him.[16]  0793 IAF, Tab 1, Tab 96 at 90-91; 0190 IAF, Tab 43 at 55-86; PFR File, Tab 21 at 50-51. This provides strong evidence that the agency's actions were not motivated by reprisal for the appellant's disclosures or prior protected activities. Rather, the agency questioned the appellant's request for official time on a full-time basis without any details or accounting as to how the time was being used. 0190 IAF, Tab 9 at 18. Thus, although the agency appeared to have a practice of granting the appellant official time with few questions asked, the fact that it granted all of the appellant's requests for official time both before and after the November email suggests that the agency questioned whether the extensive official time requested was proper and simply realized it would need to, and did, put some parameters on the appellant's requests to ensure the amount of, and bases for, the time requested were reasonable. 0190 IAF, Tab 9 at 12; 0793 IAF, Tab 38 at 8-9. The agency's conclusion that the appellant needed to specify how much leave and the purpose for which she was requesting it is consistent with the CBA. 0793 IAF, Tab 38

---

[16] The appellant was also granted official time in 2017 and 2018. 0793 IAF, Tab 15 at 51-61, 69.

at 137. Thus, we find that the agency met its burden of proving it would have taken the same actions absent the appellant's whistleblowing.

<u>The administrative judge properly found that the agency met its burden regarding the remaining personnel actions.</u>

¶82    The remaining personnel actions include: the denial of the appellant's requests for reassignment to DHI; the denial of detail assignments to the position of DFI Acting Division Chief or to act on an ad hoc basis for her supervisors; a threat to lower her performance evaluation during a mid-year review in May 2019; and a lowered fiscal year 2019 performance evaluation. The administrative judge found that the agency had legitimate reasons for these actions that outweighed any motive to retaliate and its lack of evidence concerning how it treated similarly situated nonwhistleblowers. ID at 70-87. Therefore, he concluded that the agency met its burden to prove by clear and convincing evidence that it would have taken the same actions absent the appellant's protected disclosures and activity. *Id.*

¶83    Regarding the denial of the appellant's requests for reassignment to DHI, the administrative judge credited the appellant's second-level supervisor's explanation that she denied the requests because the appellant lacked a background in ERISA. ID at 75. The administrative judge found that the appellant also made a request for reassignment to her first-level supervisor, but he denied it because he lacked the requisite authority to grant a reassignment. ID at 71, 75. Regarding the denial of acting job duties, the administrative judge credited the appellant's second-level supervisor's explanation that she offered 3- to 4-month rotating Acting Division Chief details to the GS-14 employees and that the order of rotation was based on time in the office and experience. ID at 79-80. The appellant, who had just been assigned to the office, was last in line for an acting detail, but before she could start her detail, the office received authority to hire a permanent employee to fill the position. ID at 76-77, 79. Similarly, regarding the denial of the ability to act for her first-level supervisor in

an ad hoc manner, the administrative judge credited the appellant's first-level supervisor's explanation that he chose others to act for him because the appellant was the most junior member of his staff and, unlike her peers, was only physically present in the office three afternoons per week under her telework agreement. ID at 77-78, 80.

¶84 Regarding the alleged threat to lower the appellant's performance evaluation, the administrative judge found that the agency provided strong evidence that the appellant's first-level supervisor provided legitimate workplace feedback during his mid-year meeting with the appellant when he advised her that she should be able to work on more than one project at a time. ID at 83. Finally, regarding the appellant's fiscal year 2019 performance evaluation, the administrative judge found that the appellant's supervisors had legitimate reasons for rating the appellant exceeds on two elements, specifically the appellant's interactions with her supervisor and others. ID at 86. In particular, the administrative judge credited the appellant's first- and second-level supervisors' statements that the appellant's rating was based in large part on the appellant's abrasive interactions with her first-level supervisor, the DFI Chief, which included raising her voice to him throughout the year. ID at 85-86; 0793 IAF, Tab 96 at 87, 94. Her first-level supervisor explained to the appellant during a meeting regarding her rating that her behavior in raising her voice was "disrespectful and unprofessional, differing from ordinary professional disagreements." 0793 IAF, Tab 96 at 94.

¶85 The administrative judge acknowledged that the relevant management officials could have had an institutional motive to retaliate, but he found that the strength of the evidence outweighed any possible motive. ID at 75, 80, 83, 86. We modify the initial decision to find that the appellant's second-level supervisor could also have had a personal motive to retaliate because she was named in the appellant's protected disclosure 2 in the 0793 appeal. Moreover, the errors identified in the appellant's report that formed the basis of disclosures 8 and 14

could have reflected poorly on the appellant's second-level supervisor. Additionally, the appellant's first- and second-level supervisors could have had a motive to retaliate based on the appellant's protected activities, which included the appellant's stated intent to file OSC complaints regarding their various actions, including denying her a private office and isolating her from communications with colleagues.

¶86    Regarding the third *Carr* factor, the administrative judge found that there was a lack of proper comparators and/or that the record was not developed as to whether proper comparators existed.  ID at 75, 80, 83, 86.  On review, the appellant makes various arguments challenging the administrative judge's findings concerning *Carr* factor three, which we find unpersuasive.  For example, regarding the denial of reassignment to DHI, she asserts that she identified multiple comparators who were transferred to DHI and which her second-level supervisor approved.  PFR File, Tab 9 at 52.  However, the record includes vacancy announcements evidencing that such individuals applied and competed for the positions as opposed to requesting a reassignment.  PFR File, Tab 9 at 52, 0793 IAF, Tab 16 at 63-73, Tab 18 at 55-59.  Thus, we agree with the administrative judge that such individuals were not proper comparators.

¶87    The appellant also disputes the administrative judge's finding that another comparator who was reassigned involved different management actors than the appellant's first- and second-level supervisors who denied her requests for reassignments.  ID at 75; PFR File, Tab 9 at 52.  But the appellant's argument itself acknowledges that the individual who agreed to the reassignment was her third-level supervisor, not her first or second.  Additionally, regarding the denial of appointment as Acting Division Chief of DFI, the appellant makes arguments concerning another employee who was appointed as DHI's acting chief, which we find not relevant to the acting DFI position.  PFR File, Tab 9 at 54.

¶88    Finally, the appellant asserts that the agency rated a GS-15 supervisory investigator more favorably than her despite the "hostility" of this employee

toward the appellant. PFR File, Tab 9 at 62. The administrative judge erroneously stated in the initial decision that there was no evidence of the alleged comparators' ratings, as the rating for this particular alleged comparator is in the record. ID at 86; 0793 IAF, Tab 55 at 96. Nonetheless, we find that his error was harmless. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (explaining that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision). We find that the GS-15 supervisory employee was not a proper comparator because she was a supervisor who was rated on different elements than the appellant, who held a non-supervisory GS-14 position. 0793 IAF, Tab 55 at 96; 0190, Tab 7 at 8-13.

<u>The administrative judge did not abuse his discretion in his rulings on discovery, admissibility of evidence, sanctions, or the appellant's motion to disqualify agency counsel.</u>

¶89    On review, the appellant repeatedly asserts that the administrative judge improperly relied on agency witnesses' unsigned "faux declarations." PFR File, Tab 9 at 10-11, 15-17, 29, 33, 37, 49, 61. This argument is disingenuous as the agency submitted signed sworn declarations that it contemporaneously provided to the appellant due to issues uploading documents containing digital signatures into the Board's e-Appeal system.[17] 0793 IAF, Tab 96 at 78-79 n.16; PFR File, Tab 21 at 40. The appellant further contends that the administrative judge generally did not make proper credibility findings because he credited the agency officials' statements in their declarations and failed to mention the appellant's evidence. PFR File, Tab 9 at 15. We find such arguments unavailing. The administrative judge considered the record evidence and made reasoned

---

[17] The agency has submitted signed copies of the declarations on review. PFR File, Tab 21 at 41-63. The appellant has requested leave to file a motion to strike these signed declarations as untimely filed. PFR File, Tab 26. Her motion is denied. Under the circumstances, including the agency's asserted problems uploading the digitally signed versions of the declarations, and the agency's evidence that it submitted the signed copies via email prior to the close of the record below and requested that the administrative judge include them in the record, we deny the appellant's motion.

conclusions in his comprehensive initial decision. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 104-05 (1997); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987). His failure to mention all of the evidence in the record does not mean he did not consider it. *Mithen v. Department of Veterans Affairs*, 122 M.S.P.R. 489, ¶ 14 (2015), *aff'd per curiam*, 652 F. App'x 971 (Fed. Cir. 2016).

¶90 Next, the appellant asserts that the agency's file was deficient and devoid of documentation supporting its personnel actions such that she was forced on the eve of close of record to guess the agency's defenses. PFR File, Tab 9 at 10. Notwithstanding the appellant's arguments, we find that the agency's response sufficiently put the appellant on notice regarding the reasons for its actions. 0793 IAF, Tab 26 at 5-11. Moreover, the appellant was afforded an opportunity to respond to the agency's close of record submission. 0793 IAF, Tab 93. She filed such a response. 0793 IAF, Tab 99.

¶91 Next, the appellant asserts that the administrative judge repeatedly refused to sanction the agency for its alleged unethical procedural abuses. PFR File, Tab 9 at 8. The record reflects that the appellant moved to sanction the agency for failing to provide complete responses to her discovery requests as ordered by the administrative judge. 0793 IAF, Tab 55. The administrative judge denied the appellant's motion for sanctions, but he ordered the agency to supplement portions of its discovery responses. 0793 IAF, Tab 60. Thereafter, the appellant filed a request for reconsideration of the rulings and the agency filed a cross-motion for reconsideration. 0793 IAF, Tabs 63, 66. The administrative judge granted, in part, the appellant's request for reconsideration and sanctioned the agency by drawing an inference that had certain documents been produced they would have shown a particular employee was invited to meetings to which the appellant was not invited. 0793 IAF, Tab 70. The Board has held that an administrative judge has significant discretion in ruling on discovery-related matters, and the Board will not find reversible error in an administrative judge's

discovery rulings absent an abuse of discretion that prejudiced the appellant's substantive rights. *White v. Government Printing Office*, 108 M.S.P.R. 355, ¶ 9 (2008). We find that the administrative judge did not abuse his discretion.

¶92 The appellant also asserts that the administrative judge was biased against her and ridiculed her by his use of certain language in the initial decision which characterized her as demanding, disgruntled, and having dark suspicions and feelings of persecution. PFR File, Tab 9 at 6-7, 63-64. Considering the language used, such as "the appellant's apparent feelings of persecution notwithstanding," ID at 36, we find no evidence of bias, *see Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (recognizing that an administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible" (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994))).

¶93 Next, the appellant asserts that the administrative judge improperly denied her May 6, 2022 motion to admit new evidence that was filed close to 2 years after the record closed. PFR File, Tab 9 at 10; 0793 IAF, Tab 100. In her motion, the appellant asserted that approximately 3 years after her allegations that she was denied a private office, the agency assigned another GS-14 bargaining unit employee a private office. PFR File, Tab 9 at 10-11. However, even if we consider this evidence, we find that it is not of sufficient weight to warrant a different outcome given it occurred long after the events at issue. *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980). On review, the appellant also submits alleged new evidence, including, among other things, communications in 2022 regarding official time and her mid-year performance review in May 2022. PFR File, Tab 9 at 10-11, 70-79. For the same reason, we find that such evidence is not of sufficient weight to warrant a different outcome.

¶94 Finally, the appellant asserts that the administrative judge erred in denying her motion to disqualify the agency's counsel. PFR File, Tab 9 at 9. The record

reflects that the appellant filed a timely motion to disqualify agency counsel, asserting that he was a fact witness concerning her claim that agency officials unlawfully targeted her by monitoring and surveilling her because of her Board activity and he had knowledge of the agency official's decision not to allow her detail and transfer opportunities.[18]  0793 IAF, Tab 6.  In response, agency counsel argued that his knowledge of any information stemmed from defending the agency in the appellant's prior Board appeal and settlement discussions, and the appellant's motion failed to establish a conflict of interest under 5 C.F.R. § 1201.31(b).  0793 IAF, Tab 21.  The administrative judge denied the appellant's motion, finding that insufficient grounds existed to support it.  0793 IAF, Tab 35. We agree.  The appellant did not allege facts that would demonstrate that agency counsel's representation of the agency again in a subsequent IRA appeal would create an impermissible conflict of interest under the District of Columbia Rules of Professional Conduct.  *See Collins v. Department of Justice*, 94 M.S.P.R. 62, ¶ 17 & n.3 (2003) (holding that an attorney appearing before the Board is expected to conform to applicable rules governing attorney conduct of the state in which the hearing is to be held or in the state with the closest relationship to the proceedings); *see also* D.C. Rules of Pro. Conduct R. 1.7, Conflict of Interest.

¶95    Based on the foregoing, we affirm the initial decision as modified.

## NOTICE OF APPEAL RIGHTS[19]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following

---

[18] The appellant subsequently withdrew her claim that she was subjected to monitoring and surveillance.  ID at 3, 53, n. 16.

[19] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>.** This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[20] The court of appeals must <u>receive</u> your

---

[20] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of

petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.